JUANITA SAKOSKO *et al.*, Plaintiffs-Respondents, v. THE MEMORIAL HOSPITAL, Defendant-Petitioner.

Fifth District   Nos. 5—87—0069, 5—87—0136 cons.

Opinion filed April 7, 1988.

Thomas W. Alvey, Jr., of Thompson & Mitchell, of Belleville, for appellant.

Bruce N. Cook, of Cook, Shevlin & Keefe, Ltd., of Belleville, for appellees.

JUSTICE WELCH delivered the opinion of the court:

Defendant, The Memorial Hospital, appeals from the order of the circuit court of St. Clair County adjudging it in contempt of court and imposing sanctions of a $100 fine and payment of plaintiffs' reasonable attorney fees incurred as a result of defendant's refusal to comply with two discovery orders. Plaintiffs, Juanita Sakosko and Lena F. Johnston, filed medical malpractice actions against defendant alleging that,

as a result of defendant's negligence, their surgical wounds became infected during their confinement in defendant hospital, resulting in permanent injury. Plaintiffs served upon defendant certain interrogatories and a request to produce, to which defendant objected on the ground that the requested documents and information were privileged under section 8—2101 *et seq.* of the Code of Civil Procedure (the Medical Studies Act) (Ill. Rev. Stat. 1985, ch. 110, par. 8—2101 *et seq.*). Defendant agreed to submit the documents to an *in camera* inspection by the trial court for a determination as to whether the documents came within the purview of the Medical Studies Act. After examining 32 documents and hearing evidence and argument, the trial court ordered defendant to produce exhibits 5, 6, 10A, and 15 through 32, all as redacted. All other documents were found to be privileged under the Medical Studies Act. Defendant refused to comply with the order and requested the court to certify certain questions for interlocutory appellate review.

On appeal, defendant contends that exhibits 5, 6 and 10A are privileged from discovery under both the Medical Studies Act and the physician-patient privilege in that they contain medical records of patients other than plaintiffs. (Ill. Rev. Stat. 1985, ch. 110, pars. 8—802, 8—2101 *et seq.*) Defendant claims that exhibits 15 through 32 are privileged from discovery under the attorney-client privilege and/or the work product doctrine. (107 Ill. 2d R. 201(b)(2).) Finally, defendant argues that the sanctions imposed by the trial court for defendant's failure to comply are unduly harsh and should be vacated.

The Medical Studies Act provides, in relevant part, that all information, interviews, reports, statements, memoranda or other data of committees of licensed or accredited hospitals or their medical staffs used in the course of internal quality control or medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be privileged and shall not be admissible as evidence or discoverable in any action of any kind. The improper disclosure of any such information constitutes a class A misdemeanor. Ill. Rev. Stat. 1985, ch. 110, par. 8—2101 *et seq.*

Defendant's exhibits 5 and 6 are pathology reports of tests performed to determine the source of the infection to plaintiffs. Exhibit 10A is a consultation report authored by a physician who is an expert in infection control. These documents were initiated by the defendant's environmental services committee, a committee composed of staff members which is concerned primarily with infection control, infection control evaluation and infection control studies. The purpose of this committee is to maintain internal quality control and improve patient

care. It is undisputed that this committee, and information gathered by it or documents generated by it, fall within the purview of the Medical Studies Act. However, the trial court held that exhibits 5, 6 and 10A did not fall within the purview of the Act because, in addition to being used for purposes consistent with the Act, certain information contained in these documents was shared with the defendant's risk management committee. The risk management committee used the information to assess the defendant's potential liability with respect to plaintiffs' claims. The trial court held that any information used for any purpose not consistent with the Medical Studies Act, though obtained and generated for a purpose consistent with that Act, lost its privilege and became discoverable. We disagree.

■ Preliminarily, we point out that the Medical Studies Act as in effect at the time plaintiffs filed their lawsuits did not require that in order to be privileged thereunder information must be used *exclusively* for internal quality control, medical study or improving patient care. The statute did not provide for waiver of the privilege and in fact imposed criminal penalties for improper disclosure of information falling within the Act. Since its original enactment, the Act has been repeatedly amended. Each amendment has broadened the privilege, further restricting access to privileged information. For example, prior to July 13, 1982, the Act provided only that the type of information described therein was strictly confidential and nonadmissible as evidence, but did not specifically provide that the information was privileged or nondiscoverable. Effective July 13, 1982, the Act was amended to make the type of information described therein both privileged and nondiscoverable. Pub. Act 82—783, eff. July 13, 1982 (amending Ill. Rev. Stat. 1981, ch. 110, par. 8—2101).

Subsequent to the filing of this appeal, the Medical Studies Act was again amended to provide that the disclosure of any privileged information or data, whether proper or improper, shall not waive or have any effect upon the confidentiality, nondiscoverability or nonadmissibility of that information. (Pub. Act 85—907, eff. Nov. 23, 1987 (amending Ill. Rev. Stat. 1985, ch. 110, par. 8—2102).) This amendment further broadens the privilege, and if applicable to the instant case, would require reversal of the trial court's order. We so find.

In *Niven v. Siqueira* (1985), 109 Ill. 2d 357, 487 N.E.2d 937, our supreme court discussed the retrospective application of amendments to the Medical Studies Act. The supreme court pointed out that a new law which affects only procedure generally applies to litigation pending when the law takes effect. A limited exception to the retrospective application of procedural amendments may occur when the procedural

change effectively eliminates a cause of action valid at the time the suit was filed. The amendment in question in *Niven* was the 1982 amendment making privileged information nondiscoverable as well as nonadmissible. The court held that rules relating to discovery, evidence and privilege are generally procedural and that the viability of plaintiff's medical malpractice action against a hospital alleging negligent supervision of a physician was not eliminated by the amendment. Therefore, the court applied the amendment retrospectively, held that the sought-after information was nondiscoverable, and reversed the circuit court's finding of contempt.

In *Niven*, the supreme court distinguished *Matviuw v. Johnson* (1982), 111 Ill. App. 3d 629, 444 N.E.2d 606, which involved a physician's action for defamation against another physician for statements made to a peer review committee. Defendant argued that the 1982 amendment should be applied retrospectively so as to preclude discovery and admission into evidence of the physician's allegedly defamatory statements. The trial court and the appellate court declined to apply the amendment retrospectively, finding that although procedural in nature, operation of the amendment would effectively eliminate the viability of plaintiff's defamation action based upon the statements and would thereby take on substantive dimensions.

We find the instant case to be similar to *Niven*. The 1987 amendment relates to discovery, evidence and privilege and is therefore procedural in nature. Retrospective application of the amendment to the instant case will not affect substantial rights of plaintiffs or eliminate the viability of their causes of action. Plaintiffs' causes of action do not depend upon the discoverability or admissibility of the information sought here, as was the case in *Matviuw*. Therefore, we hold that the 1987 amendment to the Medical Studies Act providing that the privilege is not waived by disclosure has retrospective application to the instant case.

■ Exhibits 5, 6 and 10A were initiated and used by a committee of an accredited hospital for internal quality control, medical study and to improve patient care. They are therefore privileged and nondiscoverable under the Medical Studies Act. This privilege and nondiscoverability is not waived or otherwise affected by the sharing of the information contained in exhibits 5, 6 and 10A with the defendant's risk management committee. The documents remain privileged and nondiscoverable and the trial court erred in ordering defendant to produce them.

Defendant also argues that exhibits 5, 6 and 10A are privileged from discovery under the physician-patient privilege. (Ill. Rev. Stat.

1985, ch. 110, par. 8—802.) In light of our finding that these same documents are privileged from discovery under the Medical Studies Act, we find it unnecessary to discuss this issue.

■■ Defendant next argues that exhibits 15 through 32 are privileged from discovery under Supreme Court Rule 201(b)(2), which provides:

> "[P]rivileged communications between a party or his agent and the attorney for the party[ ] are privileged against disclosure through any discovery procedure. Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney." 107 Ill. 2d R. 201(b)(2).

While it is unclear from defendant's brief whether it is arguing that exhibits 15 through 32 fall within the attorney-client privilege or the work product doctrine, we find that they fall under neither. Therefore, the trial court properly ordered that defendant produce exhibits 15 through 32.

Exhibits 15 through 32 are letters from the defendant's risk management consultant to the defendant's risk manager discussing what transpired at meetings of the defendant's risk management committee. The purpose of the risk management committee is to review, investigate, evaluate and dispose of professional liability claims against defendant. Present at meetings of the committee are top management officials of defendant, the risk manager, the risk management consultant and defendant's legal counsel.

We find that exhibits 15 through 32 do not fall within the attorney-client privilege because they do not constitute communications between a party and its attorney. (*People v. Chriswell* (1985), 133 Ill. App. 3d 458, 467, 478 N.E.2d 1176, 1183.) The exhibits are not addressed to or prepared by defendant's attorney. They are not memoranda of communications to, or advice from, defendant's attorney. Instead, the exhibits contain primarily factual statements relating to plaintiffs' medical conditions and prognoses. We find nothing in the exhibits which falls within the attorney-client privilege.

Nor do exhibits 15 through 32 constitute attorney work product. The exhibits do not contain or disclose any theories, mental impressions, or litigation plans of defendant or its attorney, as required by Supreme Court Rule 201(b)(2). Again, the exhibits are primarily factual statements relating to the plaintiffs' medical conditions and prognoses.

We point out that exhibits 15 through 32 have been redacted by the trial court so that certain portions cannot be read. We find no unredacted copies in the record. The trial court ordered defendant to pro-

duce exhibits 15 through 32 as redacted. Therefore, on remand, the unredacted portions of exhibits 15 through 32 should be transcribed and the transcriptions produced for plaintiff. The redacted originals should remain sealed in the court file, as close scrutiny thereof might reveal privileged information.

■ Defendant's final argument on appeal is that the trial court's order requiring defendant to pay a fine of $100 plus reasonable attorney fees incurred by plaintiffs as a result of defendant's refusal to comply with the discovery orders should be vacated. We agree. The contempt order was entered at defendant's request, as it was the proper procedure to follow in order to test on appeal the trial court's discovery orders. (See *CNR Investments, Inc. v. Jefferson Trust & Savings Bank* (1983), 115 Ill. App. 3d 1071, 1076, 451 N.E.2d 580, 583.) Defendant was not being contemptuous in that the court was not held in disdain or subjected to scorn. (*CNR Investments, Inc.*, 115 Ill. App. 3d at 1076, 451 N.E.2d at 583.) Instead, defendant was acting in a good-faith effort to secure an interpretation of the two privileges in question. (See *Pemberton v. Tieman* (1983), 117 Ill. App. 3d 502, 506, 453 N.E.2d 802, 805.) With respect to exhibits 5, 6 and 10A, defendant's refusal to comply with the discovery order was justified. With respect to exhibits 15 through 32, the trial court properly found defendant in contempt. We note, however, that plaintiffs did not address on appeal the issue with respect to these exhibits, but did discuss the issues with respect to exhibits 5, 6 and 10A. Therefore, the bulk of plaintiffs' attorney fees were incurred litigating the discoverability of exhibits 5, 6 and 10A, with respect to which defendant prevailed. In light of our finding that defendant was acting in good faith and was not acting in contempt of court, we vacate that part of the contempt order imposing a fine and requiring defendant to pay plaintiffs' attorney fees.

The contempt order is reversed with respect to exhibits 5, 6 and 10A and affirmed with respect to exhibits 15 through 32. That part of the contempt order imposing sanctions is vacated, and the cause is remanded with directions with respect to exhibits 15 through 32.

For the foregoing reasons, the order of the circuit court of St. Clair County is affirmed in part, reversed in part, vacated in part and remanded with directions.

Affirmed in part, reversed in part, vacated in part and remanded with directions.

HARRISON, P.J., and LEWIS, J., concur.