BARRY FLANNERY *et al.*, Plaintiffs-Appellees, v. STEVEN K. LIN *et al.*,
Defendants (Good Samaritan Hospital, Defendant-Appellant).

Second District   No. 2—88—0030

Opinion filed November 23, 1988.

Michael J. Gallagher and Richard A. Barrett, Jr., both of Cassiday, Schade & Gloor, of Chicago, for appellant.

Richard F. Mallen, and John G. Phillips and John F. Klebba, both of John G. Phillips & Associates, both of Chicago, for appellees.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Good Samaritan Hospital, appeals from an order finding it in civil contempt for failure to comply with a discovery order and fining it $100. Plaintiffs, Barbara and Barry Flannery, brought the underlying personal injury action against defendant hospital, Dr. Steven Lin and Dr. Jeanne Mercer which gave rise to the contempt proceedings. On appeal, defendant hospital contends that, because its code blue evaluation report was privileged under section 8—2101 *et seq.* of the Code of Civil Procedure (the Medical Studies Act) (Ill. Rev. Stat. 1987, ch. 110, par. 8—2101 *et seq.*), the trial court erroneously found it in contempt for its failure to disclose that document.

On January 10, 1977, Bridgit Flannery, who was approximately two months old, was brought to defendant hospital for treatment. While at the hospital, Bridgit developed pulmonary, respiratory, and infectious problems which caused her to suffer a respiratory or cardiac arrest. The lapse in breathing resulted in neurological damage to Bridgit.

On December 19, 1986, Bridgit's parents, Barbara and Barry, filed a four-count complaint against defendant hospital, Dr. Steven Lin and Dr. Jeanne Mercer. Counts I and III alleged negligence, and counts II and IV sought recovery under the family expense statute (Ill. Rev. Stat. 1987, ch. 40, par. 1015). Counts II and IV were dismissed with prejudice because the statute of limitations had expired for recovery under the family expense statute.

During 1987, written discovery proceeded on the remaining counts through the use of interrogatories and the production of hospital records. On July 10, 1987, the trial court ordered that all discovery be completed by October 30, 1987. On September 23, 1987, plaintiffs filed a motion to produce withheld records which included a request for a document entitled "Code Blue Evaluation Report."

Plaintiffs discovered evidence of this report when they searched Bridgit's medical records on microfiche. The report had an opaque sheet placed over it to preserve its confidentiality. Defendant informed plaintiffs that the report would not be produced because it was privileged under the Medical Studies Act (Ill. Rev. Stat. 1987, ch. 110, par. 8—2101).

The hospital filed a response to plaintiffs' motion supported by the affidavits of Patricia Anne Farley and Cheryl Jackson. In the relevant part, Farley's supplemental affidavit states the following:

"1. She is Director of Quality Management at Good Samaritan Hospital and has knowledge of the facts stated herein;

2. She is familiar with procedures at Good Samaritan Hospital in the areas of Risk Management and Quality Assurance in January, 1977, and is competent to testify to the facts stated herein;

3. The Code Blue—Evaluation Record regarding Bridgit Flannery was presented to a member of the ICU/CCU Committee for review in February, 1977.

4. Said member of the ICU/CCU Committee, Mary Fecht, would then review the Code Blue—Evaluation Record and make certain recommendations to the Committee based thereon;

5. Based upon the review of these reports, the ICU/CCU Committee would make policy recommendations to the Department of Medicine relative to changes which might be made in hospital policy and procedure in order to improve the quality of patient care.

6. Recommendations made by the Department of Medicine would be acted upon by the Executive Medical Officer and implemented to improve and assure the quality of patient care.

7. The Code Blue—Evaluation Report was, and is, intended to be confidential in order to promote frank reporting by hospital personnel of conditions which should be brought to the attention of the appropriate internal hospital committees to assure quality in patient care."

Jackson's affidavit states:

"1. She is Manager of Medical Records at GOOD SAMARITAN HOSPITAL and is competent to testify to the facts stated herein;

2. She is generally familiar with the keeping of medical records at GOOD SAMARITAN HOSPITAL in the Year 1977.

3. The Code Blue Evaluation Report prepared during the

January, 1977 admission of BRIDGIT FLANNERY was not a part of the patient's chart for purposes of diagnosis or treatment; rather, said report was prepared as an internal document for purposes of quality control and to reduce mortality and morbidity."

On October 30, 1987, the trial court conducted a hearing on plaintiffs' motion to produce in which plaintiffs objected to the defendant hospital's supporting affidavits as conclusory and speculative. On December 14, 1987, the trial court ordered defendant hospital to produce the code blue evaluation report for plaintiffs on or before December 22, 1987. At a hearing conducted on December 23, 1987, defendant hospital refused to produce the report, was found in contempt of court, and fined $100. Defendant filed a timely notice of appeal from the order finding it in contempt.

■ Before proceeding to the issue raised on appeal, we must first discuss two preliminary matters. First, in their brief, plaintiffs cited to a document entitled "Respiratory Therapy Evaluation" in support of their position. Plaintiffs acknowledge that although this document is not part of the record, they have made a motion before this court for its inclusion in the record and appended a copy of the document to their brief. We granted plaintiffs' motion to supplement the record with certain interrogatories, not the respiratory therapy evaluation. Attachments to a brief not otherwise of record are not properly before a reviewing court and cannot be used to supplement the record. (*Etten v. Lane* (1985), 138 Ill. App. 3d 439, 442, 485 N.E.2d 1177, 1179.) We therefore decline to consider the respiratory therapy evaluation attached to plaintiffs' brief.

■ Second, we note that a contempt citation is an appropriate method for testing the propriety of a discovery order. (*People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 189, 226 N.E.2d 6, 12; *Sakosko v. Memorial Hospital* (1988), 167 Ill. App. 3d 842, 848, 522 N.E.2d 273, 277; *Anderson v. St. Mary's Hospital* (1981), 101 Ill. App. 3d 596, 598, 428 N.E.2d 528, 530.) Where the trial court's discovery order is invalid, a contempt judgment for failure to comply with discovery must be reversed. (*Anderson*, 101 Ill. App. 3d at 598, 428 N.E.2d at 530; *Bauter v. Reding* (1979), 68 Ill. App. 3d 171, 174, 385 N.E.2d 886, 889.) Therefore, we must examine the propriety of the underlying discovery order.

The sole issue raised in this appeal is whether a code blue evaluation report is privileged under the Medical Studies Act (Ill. Rev. Stat. 1987, ch. 110, par. 8—2101), thereby barring it from discovery. The uncontradicted affidavit of the hospital's manager of medical records

described a code blue evaluation report as an internal document prepared for purposes of quality control and to reduce mortality and morbidity.

Defendant contends that its supporting affidavits clearly prove that the code blue evaluation report was used for internal quality control and should not be considered part of a patient's chart merely because it appeared on microfiche. Plaintiffs argue that because the report was authored contemporaneously with the events occurring during Bridgit's hospitalization, does not belong to any committee of the hospital, and was included in Bridgit's hospital chart, it is clearly outside the Act's protection.

Section 8—2101 of the Medical Studies Act states:

> "All information, interviews, reports, statements, memoranda or other data of *** committees of licensed or accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, (but not the medical records pertaining to the patient), used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be privileged, strictly confidential and shall be used only for medical research, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges, except that in any hospital proceeding to decide upon a physician's staff privileges, or in any judicial review thereof, the claim of confidentiality shall not be invoked to deny such physician access to or use of data upon which such a decision was based." Ill. Rev. Stat. 1987, ch. 110, par. 8—2101.

■ The purpose of the Medical Studies Act is "to encourage candid and voluntary studies and programs used to improve hospital conditions and patient care or to reduce the rates of death and disease. To promote these goals the legislature provided that any materials used in such studies or programs shall be confidential." (*Niven v. Siqueira* (1985), 109 Ill. 2d 357, 366, 487 N.E.2d 937, 942.) "The Act is premised on the belief that, absent the statutory peer-review privilege, physicians would be reluctant to sit on peer-review committees and engage in frank evaluations of their colleagues." *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 480, 468 N.E.2d 1162, 1168.

■ The applicability of a discovery privilege is a matter of law for the court to determine, yet whether specific materials are part of internal quality control or part of a medical study is a factual question

within that legal determination. (See *Niven*, 109 Ill. 2d at 368, 487 N.E.2d at 943.) According to plaintiffs, nothing in the record suggests that the report in question was collected by a committee of the hospital or members of its medical staff. Therefore, plaintiffs assert, the report is not privileged because it is part of Bridgit's patient records.

The plaintiffs in *Niven* raised an argument similar to that which plaintiffs have advanced here. In *Niven*, the plaintiffs moved to compel the production of certain documents in the possession of a third party, the Joint Commission on Accreditation of Hospitals. The trial court held that the documents in question were confidential and not discoverable. On appeal, the plaintiffs challenged the authenticity and accuracy of the documents. The plaintiffs asserted that the documents were not privileged unless their authenticity and accuracy were verified with supporting affidavits. The court dismissed the plaintiffs' contention because the plaintiffs failed to object to the documents' authenticity at trial. *Niven*, 109 Ill. 2d at 360, 368, 487 N.E.2d at 939, 943.

In *Sakosko v. Memorial Hospital* (1988), 167 Ill. App. 3d 842, 522 N.E.2d 273, the court found that three reports initiated and used by committees of an accredited hospital for internal quality control, medical study and improved patient care were privileged and nondiscoverable under the Medical Studies Act. Two of the reports were pathology reports of tests undertaken to determine the source of the infection to the plaintiffs in that case. They were initiated by the hospital's environmental services committee consisting of hospital staff concerned with the study, evaluation and control of infection in the hospital. The third report was a report to the committee by a physician specializing in infections. The court observed that the purpose of the committee was to maintain internal quality control and to improve patient care.

The parties in *Sakosko* did not dispute that the reports were protected from discovery by the Medical Studies Act but contended that they should be denied protection because certain information from them was made available to the hospital's risk management committee to assess the hospital's liability to the plaintiffs in that case. The court found that no such exception was found in the statute in effect at that time. *Sakosko*, 167 Ill. App. 3d at 845-46, 522 N.E.2d at 276.

■ In this case, the record adequately demonstrates that the code blue evaluation report was part of the hospital's internal quality control. Despite plaintiffs' assertions as to the speculative and conclusory nature of defendant's affidavits, we determine that Patricia Anne Farley's affidavit was sufficient to support the conclusion that

the report was part of defendant's internal quality control. In her affidavit, Farley stated that she was defendant's director of quality management. According to Farley, the code blue evaluation report was presented to Mary Fecht, a member of the ICU/CCU committee, for review. Fecht made recommendations to the committee based on the report. The committee then made policy recommendations to defendant's department of medicine as to changes in procedure which might improve the quality of patient care. Defendant's executive medical officer implemented the department of medicine's recommendations.

Plaintiffs failed to submit any counteraffidavits to the trial court which contradicted Farley's affidavit. When the facts within an affidavit are not contradicted with a counteraffidavit, they must be taken as true notwithstanding the existence of contrary unsupported allegations. (*Ligenza v. Village of Round Lake Beach* (1985), 133 Ill. App. 3d 286, 293, 478 N.E.2d 1187, 1191.) Inasmuch as none of the facts set forth in Farley's affidavit have been contradicted, defendant has adequately shown that the code blue evaluation report was used in the course of internal quality control. We therefore conclude that the report was privileged and not discoverable and reverse the trial court's judgment of contempt.

The judgment of the circuit court is reversed.

Reversed.

INGLIS and REINHARD, JJ., concur.