MICAH A. BUSS, a Minor, by Connie E. Buss, his Mother and Next Friend, *et al.*, Plaintiffs-Appellees, v. I. KEITH EDWARDS *et al.*, Defendants (Stephen L. Perry, Deputy State Registrar of Vital Records, Illinois Department of Public Health, Division of Vital Records, *et al.*, Contemnors-Appellants).

Fifth District    No. 5—89—0580

Opinion filed September 26, 1990.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Jennifer A. Keller, Assistant Attorney General, of Chicago, of counsel), for appellants.

Brent D. Holmes, of Harlan Heller, Ltd., of Mattoon, for appellees.

JUSTICE CHAPMAN delivered the opinion of the court:

The medical malpractice action underlying this appeal seeks damages allegedly caused by the conduct of the defendants during the breech birth of the minor, Micah Buss. During the course of discovery the plaintiff served a subpoena upon Stephen Perry, Deputy State Registrar of Vital Records of the Illinois Department of Public Health (hereinafter Department) which called for the production of the original or true certified copies of the Apgar scores of Micah Buss. After the Department's motion to quash the subpoena was denied, it re-

spectfully refused the court's order to produce the scores and was held in contempt and fined $10. This appeal followed.

The Department contends that the disclosure of the requested scores is barred by both the Code of Civil Procedure (Medical Studies Act) (Ill. Rev. Stat. 1987, ch. 110, par. 8—2101 *et seq.*) and the Vital Records Act (Ill. Rev. Stat. 1987, ch. 111½, par. 73—25(2)).

The Medical Studies Act provides:

"§8—2101. Information obtained. All information, interviews, reports, statements, memoranda or other data of the Illinois Department of Public Health *** (but not the medical records pertaining to the patient), used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be privileged, strictly confidential and shall be used only for medical research ***.

§8—2102. Admissibility as evidence. Such information, records, reports, statements, notes, memoranda, or other data, shall not be admissible as evidence, nor discoverable in any action of any kind in any court or before any tribunal, board, agency or person. The disclosure of any such information or data, whether proper, or improper, shall not waive or have any effect upon its confidentiality, nondiscoverability, or nonadmissibility.

§8—2103. Furnishing information. The furnishing of such information in the course of a research project to the Illinois Department of Public Health *** shall not subject *** any such agency to any action for damages or other relief.
    ***

§8—2105. Improper disclosure. The disclosure of any information, records, reports, statements, notes, memoranda or other data obtained in any such medical study except that necessary for the purpose of the specific study is unlawful, and any person convicted of violating any of the provisions of Part 21 of Article VIII of this Act is guilty of a Class A misdemeanor." Ill. Rev. Stat. 1987, ch. 110, pars. 8—2101, 8—2102, 8—2103, 8—2105.

In support of its position, the Department produced the affidavit of Dr. Stephen E. Saunders, Chief of the Division of Family Health:

"2) That Apgar Scores are number ratings representing an assessment of how well an infant at birth is adapting to extrauterine life. Assessment is done at one minute and again at five minutes using five standardized observations (heart rate,

respiratory effort, reflex irritability, muscle tone and color). With the one-minute Apgar score, one can identify specifically the resuscitative measures that should be taken. The purpose of the five-minute score is to reevaluate the newborn's condition, particularly his response to resuscitative measures. The Apgar Score is used along with a comprehensive physical assessment and an assessment of behavioral characteristics to determine how well an infant is functioning.

Although the Apgar score is useful at birth in evaluating a newborn's vital functions, with the exception of extremely low scores at both one and five minutes, research has not shown a significant relationship between the Apgar score and later growth and development of the child. The Department of Public Health includes Apgar scores on the portion of the birth certificate retained by the Department along with other information related to the mother's pregnancy and prenatal care, labor and delivery, abnormal conditions of the newborn and congenital anomalies. This information is used in research and studies needed to plan for the health and welfare of mothers and infants in this state.

3) That statistics derived from the statistical portion of birth certificates enable the Illinois Department of Public Health to evaluate the quality, quantity, and need for various health-related services and to adjust placement and amounts of grant funds to achieve optimum services from very limited resources."

The plaintiff concedes that Apgar scores may well be used for research and studies, but submits that the affidavit also establishes that they are medical records. The plaintiff then argues that as medical records they come within the parenthetical exception in section 8—2101 "(but not the medical records pertaining to the patient)" and that the Department is therefore both allowed and required to produce the Apgar scores. Ill. Rev. Stat. 1987, ch. 110, par. 8—2101.

The Department relies primarily on two appellate court decisions in support of its position with regard to the Medical Studies Act, *Flannery v. Lin* (1988), 176 Ill. App. 3d 652, 531 N.E.2d 403, and *Sakosko v. Memorial Hospital* (1988), 167 Ill. App. 3d 842, 522 N.E.2d 273.

In *Flannery* the sole issue was whether a code blue violation report was privileged under the Medical Studies Act. Affidavits in that case established that the report was not a part of the patient's medical records for purposes of diagnosis or treatment, and the court held

that it was a part of the hospital's internal quality control procedures and therefore privileged. (*Flannery*, 176 Ill. App. 3d at 657, 531 N.E.2d at 407.) In *Sakosko* the disputed items were two pathology tests performed to determine the plaintiffs' sources of infection and a consultation report by an expert in infection control. The documents were initiated by the defendant hospital as a part of its internal quality control, and the court held them privileged.

Neither *Flannery* nor *Sakosko* dealt with the issue presented herein because neither dealt with materials used for protected purposes that were also medical records of the patient used in the treatment of the patient. The items ruled privileged in those cases were not medical records of the patient; they were developed solely for use in internal quality control efforts, and we therefore do not consider those rulings persuasive under the facts of this case.

The Department also argues that the Apgar scores are not "medical records" within the statutory exception relied upon by the plaintiff. The Department contends that the scores are "information" or "data" whose production is prohibited when they reach the hands of the Department.

We find this argument tenuous at best. It is apparently based on either some magical metamorphosis from "medical records" to "information or data" that occurs upon transfer between hospital and Department, or on the fact that the legislature used different words in different sections of the Medical Studies Act. Neither basis is sound.

■ The Department's affidavit clearly establishes that the Apgar scores are recordations obtained to render treatment to plaintiff: "With the one-minute Apgar score, one can identify specifically the resuscitative measures that should be taken. The purpose of the five-minute score is to reevaluate the newborn's condition, particularly his response to resuscitative measures. The Apgar score is used along with the comprehensive physical assessment and an assessment of behavioral characteristics to determine how well an infant is functioning." Obviously they become a permanent part of the patient's record. If these scores are not medical records, it is difficult to imagine anything that would be. The fact that the Department records them in a different place or uses them in a different way or for different purposes does not change them from medical records to something else; a steer may become steak but it remains beef.

■ ■ The Department's second basis, that the legislature's use of different terms requires different meanings, is equally unavailing. While it is generally true that when the legislature uses certain words in one instance and different words in another, it intends different

results (*Aurora Pizza Hut, Inc. v. Hayter* (1979), 79 Ill. App. 3d 1102, 1105-06, 398 N.E.2d 1150), this is not a universal rule, and, given the wording of the Medical Studies Act, it would strain our credulity beyond the breaking point to accept the Department's construction.

There is a simple exception for the situation presented in this case, "but not the medical records pertaining to the patient." (Ill. Rev. Stat. 1987, ch. 110, par. 8—2101.) Earlier in section 8—2101 the legislature used the terms "information, interviews, reports, statements, memoranda, or other data." In section 8—2102 it used the above list plus "records" and "notes" and, in another context, the phrase "such information or data." In section 8—2103 the legislature used only "such information," and in section 8—2105 it used the same list as in section 8—2102 but in a slightly different order.

A perusal of these lists establishes that the legislature used different terms for the same general category of information, but that it never included the term "medical records" in the privileged class. We cannot accept the strained construction of the statute offered by the Department and therefore hold that the trial court properly ruled that the Apgar scores are medical records pertaining to the patient and come under the statutory exception of section 8—2101. See *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 479, 468 N.E.2d 1162; *Pritchard v. SwedishAmerican Hospital* (1989), 191 Ill. App. 3d 388, 397-98, 547 N.E.2d 1279.

The second statute relied upon by the Department, the Vital Records Act (Ill. Rev. Stat. 1987, ch. 111½, par. 73—25), provides:

"(2) The certification of birth may contain only the name, sex, date of birth, and place of birth, of the person to whom it relates, the name, age and birthplace of the parents, and the file number; and none of the other data on the certificate of birth except as authorized under subsection (5) of this Section.

* * *

(5) Any certification or certified copy issued pursuant to this Section shall show the date of registration; and copies issued from records marked 'delayed,' 'amended,' or 'court order' shall be similarly marked and show the effective date."

The Department cites no applicable authority for the proposition that this statute prohibits disclosure of the information sought, and this is not surprising in view of the language and purpose of the act.

■ The legislature apparently intended to preclude certain information from appearing on the birth certificate, certainly a rational decision. There is no need for an individual's Apgar scores or other

medical information to appear on a birth certificate that may have to be utilized to obtain a social security card or a passport. The fact that the statute implicitly provides that the scores are not to appear and that they therefore do not appear on the birth certificate, however, does not mean that they are privileged from disclosure when a patient requests his own records from the Department. We therefore hold that the Vital Records Act does not prohibit the Department from producing the scores.

At oral argument, counsel for the Department was asked what possible policy reason the Department could have for refusing to disclose a patient's own medical records to him. The response, after an apology to the medical profession in general, was that it was essential that the Department receive accurate information for its records and that if the information were to be disclosed in medical malpractice cases the accurate information might not be forthcoming.

We have three comments to make regarding that position. First, the only materials sought in this case are the Apgar scores of the patient himself; the plaintiff has made no attempt to obtain any internal quality control or peer review materials which are the primary protected areas under the Medical Studies Act. Second, there is no indication anywhere in the record before us that the Apgar scores were altered in any way. Third, the parties that appear in the courts of this State and the court system itself are as dependent upon and deserving of accurate information as is the Department.

■■ The final request of the Department, that the contempt finding and fine be vacated, is allowed. The circuit court understood that Mr. Perry declined to comply with its order to produce the requested scores not out of disrespect for the court, but to obtain appellate review of a ruling that he felt was not free from doubt. Under these circumstances, when the record on appeal reveals that a public official's contempt is a purely formal one motivated by a desire to obtain appellate review, it is appropriate for this court to vacate the contempt citation. *Sakosko v. Memorial Hospital* (1988), 167 Ill. App. 3d 842, 848, 522 N.E.2d 273.

We therefore hold that the order of the trial court requiring production of the Apgar scores of Micah Buss is affirmed, but that the finding of contempt and the fine of $10 are vacated.

Affirmed in part; vacated in part.

RARICK and HOWERTON, JJ., concur.