THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DOMINGO MENDOZA, Defendant-Appellant.

Second District    No. 2—01—1309

Opinion filed July 11, 2003.—Modified on denial of rehearing August 6, 2003.

G. Joseph Weller and Darren E. Miller, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Lynn Hirschfeld Brahin, of Chicago, for the People.

JUSTICE CALLUM delivered the opinion of the court:

Defendant, Domingo Mendoza, entered a blind guilty plea to burglary (720 ILCS 5/19—1(a) (West 1998)), and the trial court sentenced him to three years' probation with the condition that he comply with the Treatment Alternatives for Safe Communities (TASC) program (see 20 ILCS 301/40—5 *et seq.* (West 1998)). The State petitioned to revoke defendant's probation, and defendant admitted the allegations of the petition. The trial court sentenced defendant to 10 years' imprisonment after finding he was subject to a mandatory Class X sentence under section 5—5—3(c)(8) of the Unified Code of Corrections (Code) (730 ILCS 5/5—5—3(c)(8) (West 1998)). On appeal, defendant argues that (1) because he was not "over the age of 21 years" when he was convicted, the trial court improperly enhanced his sentence under section 5—5—3(c)(8) of the Code and (2) even if section 5—5—3(c)(8) applies here, when defendant pleaded guilty, the trial court failed to admonish him that he could be sentenced as a Class X offender. We affirm.

Defendant was born on February 10, 1978. The State charged defendant with burglary and theft (720 ILCS 5/16—1(a)(1)(A) (West 1998)). The indictment alleged that the offenses occurred on March 24, 1999. On July 23, 1999, the parties presented a plea agreement to the trial court. Defendant would plead guilty to burglary, and the State would nol-pros the theft charge. While admonishing defendant, Judge Burke advised him that burglary was a Class 2 felony punishable by 3 to 7 years' imprisonment or, if defendant was eligible for an extended term, 7 to 14 years' imprisonment. While arguing the aggravating sentencing factors, the assistant State's Attorney stated, "[t]he only reason he's not Class X eligible, Judge, is the fact that he is 21. I believe the statute requires an individual to be over the age of 21." The State asked the court to impose an extended term of eight years' imprisonment based on defendant's criminal history. See 730 ILCS 5/5—5—3.2(b)(1) (West 1998). The trial court sentenced defendant to 3 years' TASC probation and 364 days of periodic imprisonment with credit for 122 days served.

On February 2, 2000, the State petitioned to revoke defendant's probation on the ground that TASC terminated him from its treatment program. The hearing on the petition commenced on April 6, 2000. The trial court heard testimony from one witness and continued the hearing. On April 13, 2000, pursuant to the parties' agreement, the trial court continued the cause until June 15, 2000, "for status on TASC compliance." The court ordered defendant to comply with all of the conditions of the TASC program. During the June 15 hearing, a TASC representative reported that defendant was complying with the treatment program and was "doing extremely well."

On November 15, 2000, the State filed a second petition to revoke, again on the ground that TASC terminated defendant from its program. The State alleged additionally that, on August 10, 2000, he tested positive for drugs and missed several treatment appointments in July and August 2000.

Defendant admitted the allegations of the petition. During the hearing, the State informed Judge Creswell that defendant was eligible to be sentenced as a Class X offender, and Judge Creswell admonished defendant accordingly.

The trial court continued the cause for sentencing. Defendant again petitioned for TASC treatment, and TASC accepted him. At the conclusion of the sentencing hearing, the trial court found that it was unlikely that defendant would comply with a treatment program and that TASC probation would deprecate the seriousness of defendant's conduct. Accordingly, the court sentenced defendant to 10 years' imprisonment.

Defendant timely moved to reconsider the sentence. The motion argued that a sentence of six years' imprisonment would better recognize the gains defendant made while undergoing treatment and help him to progress by continuing treatment. Defendant filed a second motion arguing that section 5—5—3(c)(8) of the Code violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) and the due process guarantees recognized in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). The trial court denied the motions, and defendant timely appealed.

■ On appeal, defendant argues first that, because he was only 21 years old when he was convicted and not "over 21," the Class X recidivist provision could not be applied to him. That provision states in pertinent part:

"When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted of any Class 2 or greater Class felonies in Illinois, and such charges are separately brought and tried and arise out of different series of acts, such defendant shall be sentenced as a Class X offender." 730 ILCS 5/5—5—3(c)(8) (West 1998).

■ Defendant never raised this argument in the trial court. If, as defendant argues, however, section 5—5—3(c)(8) cannot be applied to him because of his age when convicted, then the Class X sentence is void and may be challenged on this basis for the first time on appeal. See *People v. Bradley*, 336 Ill. App. 3d 62, 72 (2002) (sentence not authorized by statute is void and may be attacked at any time).

■ When interpreting a statute, the court's primary objective is to ascertain and give effect to the legislature's intent. *People v. Jurisec*, 199 Ill. 2d 108, 118 (2002). The most reliable indicator of legislative intent is the language of the statute which, if unambiguous, must be read without exception, limitation, or other condition. *People v. Davis*, 199 Ill. 2d 130, 135 (2002). The court must give the language of the statute its plain and ordinary meaning. *People v. Morgan*, 197 Ill. 2d 404, 451 (2001). The interpretation of a statute is a question of law, which we review *de novo*. *Davis*, 199 Ill. 2d at 135.

■ Defendant urges us to interpret "over 21" as referring to someone who is at least 22 years old. We are mindful that criminal or penal statutes must be construed strictly in favor of the accused and that we should not imply anything beyond the obvious or literal meaning of the statute. *Davis*, 199 Ill. 2d at 135. We believe, however, that defendant's interpretation of section 5—5—3(c)(8) is contrary to what "over 21" is commonly understood to mean.

Becoming 21 years old is a significant milestone in our society, and

Illinois's legislative scheme reflects this. For example, persons "under 21" years old generally may not consume alcohol. 235 ILCS 5/6—20 (West 2002). The Juvenile Court Act of 1987 defines a "minor" as "a person under the age of 21 years" (705 ILCS 405/1—3(10), 5—105(10) (West 2002)) and an "adult" as "a person 21 years of age or older" (705 ILCS 405/1—3(2) (West 2002)). See also 720 ILCS 570/312(c)(2) (West 2002) (providing that a pharmacist may dispense certain controlled substances for medical purposes but only to "a person over 21 years of age").

In discussing section 5—5—3(c)(8), this court has adopted the commonly understood meaning of "over 21." We stated:

> "[The statute] presumes that persons under the age of 21 have great rehabilitative potential since a sentence will not be increased until after a defendant reaches age 21. Our interpretation is consistent with the goal of prescribing a sentence that is proportionate to the seriousness of the offense with regard to the presumption that minors should be rehabilitated." *People v. Storms*, 254 Ill. App. 3d 139, 142 (1993).

See also *People v. Dunlap*, 315 Ill. App. 3d 1017, 1029 (2000) (applying section 5—5—3(c)(8) to defendant who was 21 when convicted).

To adopt defendant's reasoning would "repeal long standing custom and usage." *In re Application of Smith*, 351 P.2d 1076, 1078 (Okla. Crim. App. 1960) (person who reaches the age of 18 is "over the age of 18" under statute defining first-degree rape); see also *State v. Linn*, 363 P.2d 361, 363-64 (Alaska 1961) (minor who turned 16 three months before committing offense was "over 16 years of age" under statute allowing minor to be tried as an adult); *Farrow v. State*, 258 A.2d 276, 277 (Del. 1969) (same; rejecting argument that statute should be strictly construed in favor of accused). Accordingly, we conclude that someone like defendant who is convicted of an offense anytime after turning 21 is "over the age of 21 years" pursuant to section 5—5—3(c)(8).

Defendant cites several decisions which are distinguishable. Most of the decisions addressed statutory language such as "21 years old or younger." *Carolina Freight Carriers Corp. v. Keane*, 311 Md. 335, 337, 534 A.2d 1337, 1338 (1988); see also *State v. Joshua*, 307 Ark. 79, 82-83, 818 S.W.2d 249, 251 (1991) ("twelve years of age or younger"); *Hansen v. State*, 421 So. 2d 504, 504 (Fla. 1982) ("eleven years of age or younger"); *State v. Carlson*, 223 Neb. 874, 880, 394 N.W.2d 669, 673 (1986) ("fourteen years of age or younger"); *State ex rel. Morgan v. Trent*, 195 W. Va. 257, 260, 465 S.E.2d 257, 260 (1995) ("eleven years old or less"). This is entirely different language that has no bearing on the analysis here. Under the type of statutory language at issue in the

decisions just cited, defendant here could be considered "21 years old or younger," but that is not the question before us. Our decision is based on the common understanding of what it means to be "over 21." It would not be inconsistent to conclude that defendant was "21 years old or younger" under a statute like the ones in the cases cited above and "over 21" under the statute at issue here.

In *State v. Christensen*, 20 P.3d 329 (Utah 2001), the State charged the defendant with rape against a victim "not older than 17." The court held that the victim, who had passed her seventeenth birthday, would not be older than 17 until she reached her eighteenth birthday. *Christensen*, 20 P.3d at 331. The court stated:

> "[I]t is almost a universal practice in our society to state our age *** by the number of full years we have lived, without adding or recognizing that we have also lived some additional months beyond those full years. We do not ordinarily recognize increase in our age until we have lived another full year." *Christensen*, 20 P.3d at 330.

This language supports defendant's position, but the analysis does not end there. Although it is custom for people to state their ages in whole numbers, the fact remains that people are continually aging. A child who reaches his or her first birthday has lived one full year and, on passing that birthday, is more than one year old. Similarly, someone who has passed his or her twenty-first birthday has lived more than 21 years and therefore is over 21. *Farrow*, 258 A.2d at 277. In *Smith*, the court referred to a statute stating that people must be "over the age of twenty-one years" to be eligible to vote. The court observed:

> "Surely no one would be so bold, in face of the long custom and usage, in that connection, to assert that before a person would become eligible to vote he would have to have reached his 22nd birthday. *** Such interpretation would amend the clear intent of the statute by unusual interpretation." *Smith*, 351 P.2d at 1078.

Additionally, we note that *Christensen* actually is not on point. The court there recognized the force of the defendant's interpretation and ultimately was swayed against him because the statute was part of a legislative scheme designed to protect children under 18. *Christensen*, 20 P.3d at 331. The court noted several examples "where the legislature has determined that a person is not capable of making adult decisions until he or she has attained the age of eighteen. A person's eighteenth birthday has specific significance in terms of personal autonomy." *Christensen*, 20 P.3d at 331. Like the *Christensen* court, we base our decision on the legal and societal significance of reaching a certain age.

We are aware that the legislature has used more specific language to describe a class of people who have reached a certain age. For

example, to be eligible for the death penalty, a defendant must have "attained the age of 18 or more." 720 ILCS 5/9—1(b) (West 2002). In the same section containing the Class X recidivist provision, the legislature has mandated, under certain circumstances, educational courses for prison inmates who are "at least 17 years of age." 730 ILCS 5/5—5—3(j—5) (West 2002).

Of course, by employing certain language in one instance and wholly different language in another, the legislature indicates that it intended different results. *In re K.C.*, 186 Ill. 2d 542, 549-50 (1999). This rule is not universal, however. *Buss v. Edwards*, 203 Ill. App. 3d 992, 997 (1990). Here, there is no strong indication that the legislature intended a different result by using "over 21" instead of "at least 21" or other similar language. In fact, the legislature has used the different phrases interchangeably within a single statutory provision. Section 6—16(a) of the Liquor Control Act of 1934 (235 ILCS 5/6—16(a) (West 2002)) prohibits a common carrier, express company, or contract carrier from delivering to anyone under 21 years old a shipping container labeled as containing alcoholic beverages and requires the signature of an "adult of at least 21 years of age." The section states further that, to prevent violations, the shipper or carrier shall refuse to deliver to anyone unable to produce adequate written evidence of identity and "of the fact that he or she is over the age of 21 years." 235 ILCS 5/6—16(a) (West 2002). Here, there is no evidence that the legislature intended the phrase "over 21" to have a meaning inconsistent with its plain and ordinary meaning. Therefore, we reject defendant's claim that section 5—5—3(c)(8) does not apply to him.

■ Defendant argues second that, even if section 5—5—3(c)(8) applies here, his plea is void because, when defendant pleaded guilty, the trial court failed to admonish that he was eligible to be sentenced as a Class X offender. Defendant has waived this issue because he did not move to withdraw his plea but instead sought only reconsideration of his sentence. 188 Ill. 2d R. 604(d); *People v. Hayes*, 336 Ill. App. 3d 145, 151 (2002). The trial court's failure to admonish the defendant properly under Supreme Court Rule 402(a) (177 Ill. 2d R. 402(a)) may constitute plain error, however. *Hayes*, 336 Ill. App. 3d at 151.

The failure to admonish a defendant properly does not automatically require reversing the judgment or vacating the plea. *Hayes*, 136 Ill. App. 3d at 151. Whether we must reverse depends on whether real justice has been denied or whether the inadequate admonishment prejudiced the defendant. *Hayes*, 336 Ill. App. 3d at 151.

When the trial court understates the maximum possible penalty but sentences the defendant within the limits as stated at the time of the plea, no prejudice results, and the defendant is not entitled to

withdraw his plea. *People v. Rhoades*, 289 Ill. App. 3d 292, 298 (1997). *Rhoades* involved a very similar situation. The State charged the defendant with two counts of burglary. During the guilty plea hearing, the trial court advised the defendant of the Class 2 sentencing range, including the possibility of an extended term of 14 years' imprisonment. Later, during the sentencing hearing, the prosecutor pointed out that the defendant had to be sentenced as a Class X offender. Also, the trial court incorrectly advised the defendant that he was eligible for TASC probation. The trial court imposed concurrent eight- and nine-year prison terms. On appeal, the court concluded that, because "[t]he defendant's request for TASC probation was considered by the trial judge, and the sentence issued was well within the range explained to the defendant at the guilty plea hearing," the inaccurate admonishments did not prejudice the defendant. *Rhoades*, 289 Ill. App. 3d at 298.

■ Here, as in *Rhoades*, when defendant pleaded guilty, the trial court advised him that he could receive an extended term of 14 years' imprisonment. Although the trial court failed to advise defendant that he was required to be sentenced as a Class X offender, it ultimately imposed a 10-year term, which is within the limits the trial court originally stated. When defendant admitted the allegations of the petition to revoke, the trial court properly advised him of the Class X sentencing range.

We are aware that it has been stated that when a defendant has been advised that the minimum sentence is less than it actually is, he cannot be deemed to have made an intelligent decision because the range of possible penalties is greater than he believed. *People v. Tripp*, 248 Ill. App. 3d 706, 715 (1993). *Tripp* is distinguishable, and we conclude that the statement in *Tripp* does not apply here. In *Tripp*, the trial court advised a defendant charged with murder that the minimum sentence was 20 years' imprisonment and that the maximum sentence was life imprisonment. In fact, the defendant was subject to a mandatory life sentence. In *Tripp*, the prejudice to the defendant was manifest. The maximum sentence as stated during the admonishments turned out to be the mandatory minimum.

Here, the record does not reveal any prejudice. Defendant has never alleged that he would not have pleaded guilty if he had known he was facing a minimum sentence of six years' imprisonment instead of three years' imprisonment. It is apparent that defendant pleaded guilty with the hope of receiving TASC probation, which he initially received. Relevant to our conclusion that real justice has not been denied here is that in his Rule 604(d) certificate, defense counsel stated that he was satisfied "after corresponding with [defendant] and

talking with him on the phone, that [defendant] does not wish to withdraw his plea of guilty to the violations of probation but seeks only to proceed on a motion to reconsider the sentence." Accordingly, we follow *Rhoades*, which is on point. We conclude that the inaccurate guilty plea admonishments did not prejudice defendant and that he is not now entitled to withdraw his plea.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN and O'MALLEY, JJ., concur.