No. 2--05--0643   filed June 30, 2006

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JOHN CANGELOSI, | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 03--L--392 |
| | ) | |
| PATRIZIO CAPASSO, ROCKFORD | ) | |
| RADIOLOGY ASSOCIATES, P.C., | ) | |
| TODD D. ALEXANDER, Individually, | ) | |
| TODD D. ALEXANDER, S.C., | ) | |
| THOMAS DAHLBERG, and ROCKFORD | ) | |
| MEMORIAL HOSPITAL, d/b/a | ) | |
| Positive Reflections, NFP, | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Timothy R. Gill, |
| (Richard D. Gaines, Contemnor-Appellant). | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the opinion of the court:

Attorney Richard D. Gaines appeals from an order finding him in direct civil contempt of court and imposing a $50 fine for noncompliance with an order directing that he turn over notes authored by Lisa Bruening, a respondent in discovery. The issue is whether Bruening's notes, which contain her recollection of relevant events, which were authored within a day of the events, prior to any litigation, and which were not turned over to an attorney for 22 months, are protected by either the attorney-client privilege or the work product privilege. For the reasons that follow, we conclude that neither privilege protects the notes. With respect to the trial court's order finding respondent in direct civil contempt, we affirm the trial court's order and sanction, and we remand.

On October 14, 2003, plaintiff, John Cangelosi, filed a medical malpractice complaint against various defendants. According to the complaint, following a skydiving accident on April 12, 2003, plaintiff was admitted to Rockford Memorial Hospital (the Hospital) with several fractures, and he remained there until April 23, 2003. Plaintiff alleged that, as a result of the negligence of the Hospital and other defendants, he suffered severe, permanent damage to his spine and was permanently disabled. On April 7, 2005, plaintiff filed an amended complaint adding Bruening as a respondent in discovery.

On January 16, 2004, plaintiff served written interrogatories upon the Hospital, requesting information about "statements from any witness other than yourself or, if a corporation, of anyone other than an officer, director, managing agent, or foreman." On February 15, 2005, the Hospital responded that it had "notes prepared by Lisa Bruening, R.N., on the evening of April 15, 2003, in contemplation of litigation. Nurse Bruening was involved in the patient's care from approximately 7:00 p.m. on April 14 until approximately 8:00 a.m. on April 15, 2003, and her conduct is placed in issue by Plaintiff's Complaint." However, the Hospital objected to production of the notes, based on the attorney-client and work product privileges.

On March 24, 2005, plaintiff filed a motion to compel production of Bruening's notes. The Hospital responded on April 29, 2005. Attached to the response was a transcript of Bruening's court-ordered deposition and a copy of Bruening's affidavit.

In her affidavit, Bruening disclosed that on April 14 and 15, 2003, she was a registered nurse at the Hospital and attended to plaintiff. During the course of Bruening's 12½-hour shift, plaintiff experienced a change in his condition and could no longer move his extremities. Bruening was concerned that "the change in the patient's condition, if permanent, would be a bad outcome" and that "this is the kind of situation which may very well develop into a lawsuit." Bruening believed

that because she was one of the persons who was attending to plaintiff when his condition changed, her care "might be put at issue in a subsequent lawsuit." Bruening "wanted to preserve [her] own recollections of the events of the evening of April 14-15, 2003, so that in the event of a lawsuit [she] and/or [her] attorney would be in a better position to defend [her] conduct." Therefore, during the evening of April 15, 2003, Bruening "made approximately 2½ pages of notes about [her] recollection of the events of the evening." Bruening did not share her notes with anyone until giving them to Gaines when she met with him on February 9, 2005.

At her deposition, Bruening testified that her notes memorialized factual things that she saw, factual things that she did, and factual things that she saw other people do. The notes include things that the doctors may have said during her shift regarding plaintiff's care. After completing her notes, Bruening placed them in a folder in her kitchen cabinet.

On May 13, 2005, the trial court ruled that Bruening's notes were not protected by the attorney-client or work product privilege and ordered Gaines to turn over the notes. On June 9, 2005, Gaines advised the trial court that he would not be turning over the notes, and the trial court found Gaines in direct civil contempt of court. Gaines indicated that he intended to appeal the trial court's order but asked that the order contain a provision allowing the contempt to be purged by turning over the notes. The trial court's June 9 order reflected the imposition of a $50 fine and provided that Gaines could purge himself of contempt by producing a copy of the notes to all parties. Gaines timely appeals.

When an individual appeals a finding of direct civil contempt arising from noncompliance with a discovery order, we must necessarily review the propriety of the discovery order. In re Marriage of Bonneau, 294 Ill. App. 3d 720, 723 (1998). If the discovery order is improper, the finding of contempt must be reversed. Bonneau, 294 Ill. App. 3d at 723. Generally, discovery

rulings are reviewed for abuse of discretion, but the applicability of a privilege is reviewed <u>de novo</u>. <u>Sterling Finance Management, L.P. v. UBS PaineWebber, Inc.</u>, 336 Ill. App. 3d 442, 446 (2002).

Supreme Court Rule 201(b)(2) provides, in pertinent part:

> "All matters that are privileged against disclosure on the trial, including privileged communications between a party or his agent and the attorney for the party, are privileged against disclosure through any discovery procedure. Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney." 166 Ill. 2d R. 201(b)(2).

To be entitled to the protection of the attorney-client privilege, a claimant must show that (1) a statement originated in confidence that it would not be disclosed; (2) it was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services; and (3) it remained confidential. <u>Rounds v. Jackson Park Hospital & Medical Center</u>, 319 Ill. App. 3d 280, 285-86 (2001). "The work product doctrine provides a broader protection than the attorney-client privilege and is designed to protect the right of an attorney to thoroughly prepare his case and to preclude a less diligent adversary attorney from taking undue advantage of the former's efforts." <u>Fischel & Kahn, Ltd. v. Van Straaten Gallery, Inc.</u>, 189 Ill. 2d 579, 591 (2000), citing <u>Hickman v. Taylor</u>, 329 U.S. 495, 510-11, 91 L. Ed. 451, 462, 67 S. Ct. 385, 393-94 (1947).

Gaines argues that "[t]he evidence unequivocally demonstrates that Bruening drafted the [n]otes to assist her attorney in defending possible future litigation, and further that she held the [n]otes in strict confidence until she provided them to her attorney. Thus, they are protected by the attorney-client privilege." Gaines also argues that, "because the [n]otes also reflect Bruening's own writings made in reasonable anticipation of future litigation, they are also protected by the work product privilege." We conclude that neither privilege applies.

Turning first to the claim of attorney-client privilege, the critical issue is whether Bruening's notes were a communication made to an attorney for the purpose of securing legal advice. Rounds is instructive on this issue. In Rounds, a medical malpractice action, the plaintiff sought to discover a nurse's written statement and other nurses' incident reports, which detailed the sequence of events that transpired at the hospital. The nurse who prepared the statement provided an affidavit in which she averred that she prepared it because she " 'believed that this matter would likely result in litigation' " and she wanted to " 'be able to provide [the] document as a communication to those attorneys assigned to represent [her].' " Rounds, 319 Ill. App. 3d at 286. The hospital asserted that the documents were made in anticipation of litigation and claimed the attorney-client privilege. After the hospital refused to turn over the documents, the trial court found the hospital in contempt of court, and the hospital appealed.

On appeal, the First District determined that the attorney-client privilege did not apply. Rounds, 319 Ill. App. 3d at 284-88. The reviewing court first ruled that, despite the affidavit, the hospital "has not presented any facts that would indicate to this court that the [nurse's statement] was anything more than the result of a mere prediction by [the] nurse." Rounds, 319 Ill. App. 3d at 286. As to all the documents, the reviewing court noted that there was "no indication from the record that the documents were created subsequent to the lawsuit or at the direction of an attorney. *** There had not been an attorney-client relationship created prior to the creation of the reports." Rounds, 319 Ill. App. 3d at 287. The reviewing court rejected the hospital's argument that the documents had " 'the intent of attorney-client communications,' " noting that "[t]he documents contain primarily factual statements relating to [the plaintiff's] medical condition *** and the events surrounding her treatment while at [the hospital]." Rounds, 319 Ill. App. 3d at 288; see also Chicago Trust Co. v. Cook County Hospital, 298 Ill. App. 3d 396, 408-09 (1998) (finding the attorney-client privilege

inapplicable because the documents at issue were not addressed to the attorney and did not seek legal advice); Sakosko v. Memorial Hospital, 167 Ill. App. 3d 842, 847 (1988) (finding the attorney-client privilege inapplicable because the documents at issue were not addressed to the client's attorney and "contain[ed] primarily factual statements relating to plaintiffs' medical conditions and prognoses").

Here, like the nurse in Rounds, Bruening authored the notes because she believed "this is the kind of situation which may very well develop into a lawsuit." Bruening wrote the notes upon her return home after her shift and, at that time, no lawsuit had been filed. Bruening testified that the primary focus of the notes was to memorialize what had happened during her shift. Like the documents in Rounds, Bruening's notes contain primarily factual statements relating to what she had observed and heard. And, as in Rounds, Bruening did not have an attorney when she authored the notes, nor were the notes directed to an attorney. All of the above factors taken together lead us to conclude that Bruening's notes were not a communication with an attorney for the purpose of securing legal advice. Turning the notes over to an attorney 22 months later did not change the nature of the notes.

Gaines argues that "the 'essence' of the privilege is the confidentiality of the communication." That may be so; however, that presumes the existence of a communication. As already stated, Bruening's notes simply do not constitute a communication with an attorney. Gaines also argues that the absence of an attorney-client relationship when the notes were authored is of no moment. He asserts that "a communication has been held to be protected even when made well before the attorney-client relationship is formed if the communication is created in the context of obtaining legal representation." Again, this assertion presumes the notes were a communication with an attorney. Had Bruening met with Gaines on the evening of April 15, 2003, and told him what had

happened during her shift at the hospital, that communication might have been privileged even though Gaines had not been retained at the time. However, that is not the factual scenario with which we are presented.

Turning next to the issue of whether Bruening's notes were protected by the work product doctrine, it is clear that they are subject to discovery because they do not "contain or disclose the theories, mental impressions, or litigation plans of the party's attorney." 166 Ill. 2d R. 201(b)(2); Shapo v. Tires 'N Tracks, Inc., 336 Ill. App. 3d 387, 393 (2002) (noting that Rule 201(b)(2) "sets the parameters for the scope of discovery of work-product materials"). As noted, Bruening's notes contained her own factual recollection of events.

Because Bruening's notes were not protected by either the attorney-client privilege or the work product privilege, the trial court properly ordered Gaines to turn over the notes. Hence, we must consider the trial court's order finding Gaines in direct civil contempt. Where a party's refusal to comply with a trial court's order constitutes a good-faith effort to secure an interpretation of the two privileges in question, it is appropriate to vacate a contempt citation on appeal. Sakosko, 167 Ill. App. 3d at 848. In this case, the record indicates that Gaines asked to be held in contempt because he planned to seek appellate review of the trial court's order compelling him to turn over Bruening's notes. However, in his appellate brief, Gaines "wishes to make clear that he does not seek [to have the contempt citation vacated], as it may cause the issue to become moot for purposes of seeking further review." In light of this request, we affirm the trial court's order finding Gaines in direct civil contempt.

For the foregoing reasons, we affirm the order of the circuit court of Winnebago County, and we remand this case for further proceedings.

Affirmed and remanded.

GROMETER, P.J., and BYRNE, J., concur.