NOTICE

Decision filed 08/06/14. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2014 IL App (5th) 130356

NO. 5-13-0356

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| CAROL KLAINE and KEITH KLAINE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees, | ) | Williamson County. |
| | ) | |
| v. | ) | No. 11-L-163 |
| | ) | |
| SOUTHERN ILLINOIS HOSPITAL SERVICES, | ) | |
| d/b/a St. Joseph Memorial Hospital and Memorial | ) | |
| Hospital of Carbondale, | ) | |
| | ) | |
| Defendant-Appellant | ) | |
| | ) | Honorable |
| (Frederick Dressen and Southern Illinois Medical | ) | Brad K. Bleyer, |
| Services, d/b/a Center for Medical Arts, Defendants). | ) | Judge, presiding. |

_____

JUSTICE SPOMER delivered the judgment of the court, with opinion.
Presiding Justice Welch and Justice Chapman concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Southern Illinois Hospital Services, doing business as St. Joseph Memorial Hospital and doing business as Memorial Hospital of Carbondale, appeals the July 9, 2013, order of the circuit court of Williamson County which found it to be in contempt of court for failing to produce documents to the plaintiffs, Carol and Keith Klaine, and which assessed a $1 "friendly contempt" penalty in order to facilitate this

1

interlocutory appeal pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Feb. 26, 2010). The circuit court entered its order upon the defendant's motion after it reviewed all of the relevant documents *in camera*, and found, in a letter to the parties dated May 7, 2013, that documents labeled "Group Exhibit F" and "Group Exhibit J" were not privileged and ordered the defendant to produce them.[1]

¶ 2     On appeal, the defendant raises the following issues with regard to "Group Exhibit F," which consists of "Health Care Professional Credentialing and Business Data Gathering Form[s]" (applications for staff privileges) which were submitted to the defendant by Dr. Frederick Dressen, D.O., another defendant in the underlying medical malpractice action, but not a party to this appeal: (1) whether Dr. Dressen's December 1, 2011, application for staff privileges is irrelevant to this malpractice action pursuant to the standard set forth in Illinois Supreme Court Rule 201(b)(1) (eff. Jan. 1, 2013), and thus, undiscoverable; (2) whether the applications for staff privileges contained in "Group Exhibit F" are privileged under section 15(h) of the Illinois Health Care Professional Credentials Data Collection Act (the Data Collection Act) (410 ILCS 517/15(h) (West 2012)); and, in the alternative (3) whether certain information within the applications for staff privileges should be redacted because the information is privileged under section 8-2102 of the Illinois Code of Civil Procedure (the Medical Studies Act) (735 ILCS 5/8-2102 (West 2012)), section 11137 of the federal Health Care Quality Improvement Act

---

[1]The circuit court also found documents labeled "Group Exhibit B" were privileged and had to be produced, but the defendant is not appealing that ruling.

(42 U.S.C. § 11137 (2012)), section 1320d of the federal Health Insurance Portability and Accountability Act (42 U.S.C. § 1320d (2012)), and the physician-patient privilege as codified in section 8-802 of the Illinois Code of Civil Procedure (735 ILCS 5/8-802 (West 2012)).

¶ 3    With regard to "Group Exhibit J," which consists of lists of procedures performed by Dr. Dressen, the defendant argues that such documents are privileged pursuant to section 8-2102 of the Medical Studies Act (735 ILCS 5/8-2102 (West 2012)).  Finally, the defendant argues that, irrespective of whether this court finds the contested documents to be privileged, this court should vacate the finding of contempt and assessment of the monetary penalty, because it refused to tender the contested documents in good faith.  For the following reasons, we affirm the circuit court's discovery order as embodied in its May 7, 2013, letter to the parties, with the following modifications: (1) references to the Greeley Report and its findings that are contained in the December 1, 2011, application for staff privileges, "Group Exhibit F" at MHCPL 37, 38, and 39, shall be redacted; and (2) any references to identifying patient information, contained within the applications for staff privileges contained in "Group Exhibit F" and the Surgeon Case Histories contained in "Group Exhibit J," should be produced in compliance with the provisions of 45 C.F.R. § 164.512(e) (2012).  In addition, we vacate the July 9, 2013, order that found the defendant to be in contempt and assessed a monetary penalty, and remand this cause for further proceedings.

¶ 4                                FACTS

¶ 5    The plaintiffs filed an amended complaint in the circuit court of Williamson County on August 10, 2012, alleging medical malpractice on the part of Dr. Dressen during a gallbladder removal procedure that took place on February 2, 2011, causing a colon perforation and two additional procedures to resection the colon and create an ileostomy. In addition to the claims against Dr. Dressen, the plaintiffs alleged causes of action against the defendant for negligent credentialing of Dr. Dressen. On March 18, 2013, the plaintiffs filed a motion to compel the defendant to produce certain documents in discovery, and the defendant filed a response with a privilege log specifying that certain documents that were responsive to the plaintiffs' discovery requests were privileged.

¶ 6    The circuit court conducted an *in camera* review of the documents that the defendant claimed were privileged, which were submitted to the circuit court under seal and remain under seal on appeal. On May 7, 2013, the circuit court ruled that all of the documents were privileged with the exception of "Group Exhibit B," "Group Exhibit F," and "Group Exhibit J," and this ruling was embodied in a letter to the parties on that date. On May 23, 2013, the defendant filed a motion to reconsider as to "Group Exhibit F" and Group Exhibit J," which the circuit court denied on June 10, 2013. On June 26, 2013, the defendant filed a motion for a finding of contempt in order to facilitate an immediate appeal from the circuit court's order pursuant to the terms of Illinois Supreme Court Rule 304(b)(5) (eff. Feb. 26, 2010). On July 9, 2013, the circuit court granted the motion and assessed a $1 "friendly contempt" penalty. The defendant filed a timely notice of appeal.

4

Additional facts necessary to our analysis of the various issues on appeal may be set forth throughout this order.

¶ 7                                              ANALYSIS

¶ 8     We begin with a discussion of our standard and scope of review. First, we note that the plaintiffs did not file a brief on appeal. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128 (1976), provides a framework for our review in such a case. The order of the circuit court cannot be reversed *pro forma* for the appellee's failure to file a brief as required by rule, because a circuit court's considered judgment should not be set aside without some consideration of the merits of the appeal. *Id.* at 131. Although we are not required to serve as an advocate for the plaintiffs, we may only reverse the order of the circuit court if the defendant's brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record. See *id.*

¶ 9     Because the defendant is appealing a finding of direct civil contempt from noncompliance with a discovery order, we must necessarily review the propriety of the discovery order. *Cangelosi v. Capasso*, 366 Ill. App. 3d 225, 227 (2006). In fact, requesting that the circuit court enter a contempt order is a proper procedure to seek immediate appeal of a discovery order, which is otherwise not subject to interlocutory appeal as a matter of right. *Anderson v. Rush-Copley Medical Center, Inc.*, 385 Ill. App. 3d 167, 185 (2008). If the discovery order is improper, the finding of contempt must be reversed. *Cangelosi*, 366 Ill. App. 3d at 227. If we find that the discovery order should be upheld, we may nevertheless vacate the finding of contempt and assessment of a monetary penalty if we find that the defendant's refusal to produce the documents at issue

5

was not contemptuous of the circuit court's authority, but rather was made in good faith based on sound legal arguments for purposes of effectuating an interlocutory appeal. *Anderson*, 385 Ill. App. 3d at 186.

¶ 10    Generally, discovery rulings are reviewed for an abuse of discretion, but the applicability of a privilege is reviewed *de novo*.  *Cangelosi*, 366 Ill. App. 3d at 227. However, whether specific materials are part of an internal quality control or a specific medical study as set forth in section 8-2102 of the Medical Studies Act (735 ILCS 5/8-2102 (West 2012)) is a factual determination, which will not be reversed on review unless it is against the manifest weight of the evidence.  *Anderson*, 385 Ill. App. 3d at 174.  With these standards in mind, we will address the discoverability of the documents at issue in turn.

¶ 11                                    1. "Group Exhibit F"

¶ 12            a. *Relevancy of December 1, 2011, Application for Staff Privileges*

¶ 13    "Group Exhibit F" consists of three applications for staff privileges, which were submitted by Dr. Dressen and dated February 19, 2009, August 13, 2010, and December 1, 2011.  We begin our review of the discoverability of these documents by considering the defendant's argument that the December 1, 2011, application for staff privileges is not discoverable because it is not relevant to the plaintiffs' claims.  We begin by noting that our review of the record reveals that the defendant raised the issue of the December 1, 2011, application for staff privileges for the first time in its motion to reconsider.  There is authority in Illinois for the proposition that arguments first raised in a motion to reconsider are deemed forfeited and cannot be raised on appeal.  See *American Chartered*

6

*Bank v. USMDS, Inc.*, 2013 IL App (3d) 120397, ¶ 13; see also *Sewickley, LLC v. Chicago Title Land Trust Co.*, 2012 IL App (1st) 112977, ¶ 36. Although the circuit court has discretion to consider a new issue raised for the first time in a motion to reconsider when the party has a reasonable explanation for why it did not raise the issue earlier in the proceedings (see *Delgatto v. Brandon Associates, Ltd.*, 131 Ill. 2d 183, 195 (1989)), the record contains no such explanation. Accordingly, we find that the defendant has forfeited this issue on appeal.

¶ 14    Forfeiture aside, because this is not an issue of privilege, but one of relevance, our standard of review is for an abuse of discretion. See *Cangelosi*, 366 Ill. App. 3d at 227. Illinois Supreme Court Rule 201(b)(1) (eff. Jan. 1, 2013) defines the scope of discovery in civil cases and has been interpreted to allow discovery of all information that would be admissible at trial as well as information which is reasonably likely to lead to admissible evidence. *Manns v. Briell*, 349 Ill. App. 3d 358, 361 (2004). The defendant argues that the information contained in Dr. Dressen's December 1, 2011, application for staff privileges is irrelevant to the plaintiffs' negligent credentialing claims because the application was submitted after Dr. Dressen's allegedly negligent treatment of Carol Klaine, and therefore could not have been considered by the defendant's credentialing committee prior to the events at issue. After considering the defendant's argument, we find that the circuit court may have reasonably found that information contained within the application could contain information reasonably likely to lead to admissible evidence of the plaintiffs' claims, such as information regarding Dr. Dressen's treatment of Carol Klaine. Accordingly, we find the circuit court did not abuse its discretion in this regard.

¶ 15                          b. *The Data Collection Act*

¶ 16    Having given consideration to the defendant's arguments with regard to the relevancy of the December 1, 2011, application for staff privileges contained in "Group Exhibit F," we turn now to the defendant's argument that all of the applications for staff privileges contained in "Group Exhibit F" are privileged pursuant to section 15(h) of the Data Collection Act (410 ILCS 517/15(h) (West 2012)).   The Data Collection Act authorizes the Illinois Department of Public Health to establish a uniform hospital credentials form that includes the credential data commonly requested by hospitals for purposes of credentialing and requires health care professionals to complete these forms when applying for appointment to the medical staff of a hospital.  410 ILCS 517/15(a)(3), (e) (West 2012).  The Data Collection Act further provides, in relevant part, as follows:

> "Any credentials data collected or obtained by the *** hospital shall be confidential, as provided by law, and otherwise may not be redisclosed without written consent of the health care professional ***.   *** [A]ny redisclosure of credentials data contrary to this Section is prohibited."   410 ILCS 517/15(h) (West 2012).

¶ 17    It is this section upon which the defendant bases its claim of privilege.   Our analysis of this issue requires a determination of whether the above-quoted language creates a privilege against discovery of all applications for staff privileges created under the Data Collection Act.  We find that it does not.  When construing a statutory provision, this court must " 'ascertain and give effect to the true intent and meaning of the legislature.' "  *TTX Co. v. Whitley*, 295 Ill. App. 3d 548, 553 (1998) (quoting *Hernon v.*

8

*E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 194 (1992)); *City of Decatur v. American Federation of State, County, & Muncipal Employees, Local 268*, 122 Ill. 2d 353, 364 (1988). "Privileges are strongly disfavored because they are in derogation of the search for truth [citation] and must be strictly construed as an exception to the general duty to disclose [citation]." *People ex rel. Birkett v. City of Chicago*, 292 Ill. App. 3d 745, 749 (1997). For this reason, there is no general principle under Illinois law that provides that information that is otherwise discoverable is privileged because it is confidential. *Id.* at 753. Our courts have been reluctant to expand or create such privileges because while the courts value policies that favor the admission of all relevant and reliable evidence which directly assists the judicial function of ascertaining the truth, it is the responsibility of the legislature to promote policies aimed at balancing broader social goals that may conflict in some way with the judicial function. *Id.* at 751 (quoting *People v. Sanders*, 99 Ill. 2d 262, 271 (1983)).

¶ 18    With the aforementioned principles in mind, we must look only to the language of the section 8-2102 of the Medical Studies Act (735 ILCS 5/8-2102 (West 2012)) to determine that where the legislature has intended to create a privilege, it has done so explicitly. That section provides that material generated under that act "shall not be admissible as evidence, *nor discoverable in any action of any kind in any court or before any tribunal, board, agency or person*." (Emphasis added.) 735 ILCS 5/8-2102 (West 2012). The section goes on to provide that "[t]he disclosure of any such information *** shall not waive or have any effect upon its *confidentiality*, *nondiscoverability*, or *nonadmissibility*." (Emphasis added.) 735 ILCS 5/8-2102 (West 2012). It is clear from

9

the language of these sections that confidentiality, discoverability, and admissibility are distinct concepts and when the legislature means to provide for the nondiscoverability of confidential information, it does so explicitly.

¶ 19    For the aformentioned reason, we decline to follow the rationale of our colleagues in the First District in *TTX Co. v. Whitley*, 295 Ill. App. 3d 548, 555 (1998), which held that the confidentiality provision in section 917(a) of the Illinois Income Tax Act (Tax Act) (35 ILCS 5/917(a) (West 1994)) prohibited discovery of information contained in tax returns because that section did not contain an exception for disclosure in judicial proceedings.  As the First District recognized, where the courts have held that documents subject to confidentiality provisions in state statutes could not be disclosed during discovery or at trial, the plain language of those statutes specifically stated that the confidential documents were inadmissible in court.  *TTX Co.*, 295 Ill. App. 3d at 556. Nevertheless, the First District chose to impose a nondiscoverablity provision where none existed.  *Id.* (citing *Niven v. Siqueira*, 109 Ill. 2d 357, 366 (1985) (interpreting section 8-2102 of the Medical Studies Act (Ill. Rev. Stat. 1983, ch. 110, ¶ 8-2102)); *Arnold v. Thurston*, 240 Ill. App. 3d 570, 574 (1992) (interpreting section 11-412 of the Illinois Vehicle Code (Ill. Rev. Stat. 1991, ch. 95½, ¶ 11-412)); *People v. Ellis*, 128 Ill. App. 3d 180, 183 (1984) (interpreting section 1900 of the Unemployment Insurance Act (Ill. Rev. Stat. 1983, ch. 48, ¶ 640))).  We also note that this interpretation of section 917(a) of the Tax Act (35 ILCS 5/917(a) (West 1994)) was unnecessary, as the court ultimately determined that the information that was sought was irrelevant to the issues in the case. *TTX Co.*, 295 Ill. App. 3d at 557.

¶ 20    In summary, we decline to follow the First District's decision in *TTX Co.* to impose a privilege where the legislature has imposed a duty of confidentiality and hold that a privilege does not exist unless the legislature makes an explicit provision to that end.  It has not done so with regard to applications for staff privileges created pursuant to the Data Collection Act, and accordingly, the circuit court did not err in its order finding the applications for staff privileges are not privileged.

¶ 21                           c. *References to Greeley Report*

¶ 22    Having found that the applications for staff privileges contained in "Group Exhibit F" are not privileged, we must consider, in turn, the defendant's arguments that specific information contained within the applications for staff privileges must be redacted.  First, the defendant argues that references made to findings contained in a report issued by the Greeley Company that are contained within Dr. Dressen's December 1, 2011, application for staff privileges on pages MHCPL 37, 38, and 39 must be redacted because they are privileged pursuant to section 8-2102 of the Medical Studies Act (735 ILCS 5/8-2102 (West 2012)).  According to affidavits contained in the record, the Greeley Company is a medical consulting company that the defendant retains to conduct external peer reviews of its physicians when it is deemed appropriate by the defendant's medical staff quality oversight committee (MSQOC) or other committees.  The MSQOC is a standing committee which is responsible for overseeing the accountability and effectiveness of the individual peer-review committees and for developing systematic approaches to evaluating and improving physician performance.

11

¶ 23 In June 2011, the peer-review committee recommended that Dr. Dressen be referred to the MSQOC for a Focused Professional Practice Evaluation (FPPE). The MSQOC approved the FPPE of Dr. Dressen at its meeting on June 22, 2011, and requested the Greeley Company to conduct that FPPE. Greeley finalized the report regarding the peer review of Dr. Dressen in September 2011, and it was subsequently reviewed by a focus subgroup of members of the MSQOC and peer-review committees. The documents exchanged between the Greeley Company and the defendant, as well as the report prepared by the Greeley Company, were produced to the circuit court for *in camera* inspection, and the circuit court concluded that these documents were privileged pursuant to section 8-2102 of the Medical Studies Act (735 ILCS 5/8-2102 (West 2012)), which provides, *inter alia*, that information and documents used by a hospital in the course of internal quality control are not discoverable in any action.

¶ 24 We agree with the defendant that the references to the findings of the Greeley Report that are contained in the December 1, 2011, application for staff privileges on pages MHCPL 37, 38, and 39 of the privilege log are privileged and must be redacted. See *Ardisana v. Northwest Community Hospital, Inc.*, 342 Ill. App. 3d 741, 747 (2003) (the Medical Studies Act protects documents and information that arise from the workings of a peer-review committee as well as a peer-review committee's recommendations and internal conclusions). However, only the reference to the Greeley Report and its finding should be redacted. The other information on these pages which relates to the status, revocation, modification, or restriction of Dr. Dressen's privileges, and Dr. Dressen's characterization of the reasons therefor, aside from the findings of the

12

Greeley Report, are not privileged and are not to be redacted. See *id.* (results of a peer-review committee, taking the form of ultimate decisions made or actions taken by that committee, or the hospital, including the revocation, modification, or restriction of privileges, are not privileged).

¶ 25     d. *References to National Practitioner Data Bank*

¶ 26   The defendant next argues that information within Dr. Dressen's applications for staff privileges that refers to information that was reported to the National Practitioner Data Bank (NPDB) is privileged under section 11137 of the Health Care Quality Improvement Act (42 U.S.C. § 11137 (2012)). The Health Care Quality Improvement Act creates the NPDB, to which medical malpractice insurance carriers, boards of medical examiners, and health care entities are required to report information respecting the payment of claims, disciplinary actions, and other adverse information respecting a health care professional. See 42 U.S.C. §§ 11131-11134 (2012). The act further requires that each hospital request such information from the NPDB for each health care practitioner who applies for privileges or staffing. 42 U.S.C. § 11135 (2012).

¶ 27   Section 11137 of the Health Care Quality Improvement Act provides that information reported under that act is considered confidential and shall not be disclosed except in narrowly enumerated situations. 42 U.S.C. § 11137 (2012). It is pursuant to this provision that the defendant claims that Dr. Dressen's references, within his applications for staff privileges, to information reported to the NPDB, should be redacted. However, section 11137 further provides that "[n]othing in this subsection shall prevent the disclosure of such information by a party which is otherwise authorized, under

13

applicable State law, to make such disclosure."  42 U.S.C. § 11137(b)(1) (2012). Pursuant to this language, we find that, although the NPDB and reporting entities are required to keep reported information confidential as a general rule, under Illinois discovery rules, the defendant is authorized, and is in fact, required, to produce this information with respect to the plaintiffs' negligent credentialing claim.  For this reason, we find that this information is not to be redacted from Dr. Dressen's applications for staff privileges.

¶ 28                    e. *Information Regarding Treatment of Other Patients*

¶ 29   The defendant's next argument on appeal regarding information contained in Dr. Dressen's applications for staff privileges that are set forth in "Group Exhibit F" is that any information regarding Dr. Dressen's care and treatment of other patients must be redacted because it is privileged under the Health Insurance Portability and Accountability Act (HIPAA) (42 U.S.C. § 1320d *et seq.* (2012)) and the regulations promulgated thereunder.  In the defendant's brief, defendant's counsel states to this court that "[n]one of the Code of Federal Regulations allow for the disclosure of the private health information of any of Dr. Dressen's other patients in this lawsuit."  Our review of HIPAA regulations leads to a different conclusion.  First, much of the information for which the defendant is claiming privilege does not contain "individually identifiable health information" and is therefore not protected information under HIPAA.  See *In re Zyprexa Products Liability Litigation*, 254 F.R.D 50, 54 (E.D.N.Y. 2008) (quoting 45 C.F.R. § 164.514(a) (2008)).  Furthermore, a cursory review of the scope of HIPAA reveals that, pursuant to HIPAA regulations, there are many circumstances in which " '[a]

14

covered entity may use or disclose protected health information without the written authorization of the individual ... or the opportunity for the individual to agree or object' " (*id.* at 53 (quoting 45 C.F.R. § 164.512 (2008))). These regulations contain an explicit standard governing the disclosure of protected health information for judicial and administrative proceedings that the defendant's counsel failed to cite to this court. See 45 C.F.R. § 164.512(e) (2012). The information contained within Dr. Dressen's applications for staff privileges is clearly discoverable under the provisions of that section, either by a court order expressly authorizing the disclosure of the information or with a qualified protective order as defined by that section. Accordingly, we will not order the information to be redacted and trust that the parties will see that the provisions of this regulation are followed.

¶ 30        f. *Information Regarding Dr. Dressen's Medical Condition*

¶ 31    The defendant next argues that information regarding Dr. Dressen's medical condition that is contained within his applications for staff privileges is protected by the physician-patient privilege, which provides that "[n]o physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient." 735 ILCS 5/8-802 (West 2012). Here, the information that the defendant seeks to have redacted consists of Dr. Dressen's own responses to questions in his applications regarding whether he has a medical condition, physical defect, emotional impairment, or substance abuse issue which in any way impairs or limits his ability to practice medicine with reasonable skill and safety. The physician-patient privilege

15

" 'exists as to "any information" acquired by a physician in a professional capacity which is "necessary" to enable him to "serve" his patient.' " *Kraima v. Ausman*, 365 Ill. App. 3d 530, 533 (2006) (quoting *Pritchard v. SwedishAmerican Hospital*, 191 Ill. App. 3d 388, 404 (1989) (quoting *Geisberger v. Willuhn*, 72 Ill. App. 3d 435, 437 (1979))). The information the defendant seeks to redact is Dr. Dressen's own assessment of his physical and mental condition, and in no way relates to information acquired by a physician in a professional capacity for the purposes of diagnosing or treating Dr. Dressen as a patient. For this reason, we find the physician-patient privilege does not apply to this information, and will not order the information to be redacted.

¶ 32                              2. "Group Exhibit J"

¶ 33    Having determined that the documents in "Group Exhibit F" are discoverable with references to the findings of the Greeley Report redacted, we now consider the defendant's argument that the documents contained in "Group Exhibit J" are privileged under section 8-2102 of the Medical Studies Act (735 ILCS 5/8-2102 (West 2012)). Although the question of whether a discovery privilege applies is a matter of law, which we review *de novo*, the question of whether specific materials fall within the purview of a "medical study" pursuant to section 8-2102 of the Medical Studies Act (735 ILCS 5/8-2102 (West 2012)) is a factual question within that legal determination, subject to reversal on review only if it is against the manifest weight of the evidence. *Ardisana v. Northwest Community Hospital, Inc.*, 342 Ill. App. 3d 741, 746 (2003).

¶ 34    The documents contained within "Group Exhibit J" contain "procedure summaries" for Dr. Dressen from the years 2007 through 2011. The documents contain a

16

list of procedures performed by Dr. Dressen during these years and indicate how many of the procedures Dr. Dressen performed. Along with the procedure summaries, there are two pages, located at MHCPL 669 and 670, entitled "Surgeon Case History," which contain more specific procedure data, including date, name of procedure, and patient name.

¶ 35 In support of its claim of privilege with regard to these documents, the defendant submitted affidavits from its medical staff manager and from the senior corporate director of patient relations. Because the burden of establishing a privilege under the Medical Studies Act is on the party seeking to invoke it, we must set forth these affidavits in detail in order to determine if the affidavits set forth sufficient facts to establish the applicability of the Medical Studies Act to the documents set forth in "Group Exhibit J." See *Ardisana*, 342 Ill. App. 3d at 746.                    .

¶ 36 According to the affidavit of the medical staff manager, the system credentialing committee is a standing committee for the defendant. When a physician with current staff privileges with the defendant requests reappointment, "documentation would be generated regarding the physician's practice over the previous appointment period," including physician profiles and a list of procedures that have been performed over that period. According to the affidavit of the medical staff manager, physician profiles are prepared "for the use of" the system credentialing committee for use in reappointments, as well as "for the use of" the MSQOC as part of ongoing professional practice evaluations that are conducted by that committee. According to the affidavit of the senior corporate director of patient relations, physician profiles are prepared "for the use of" the

17

MSQOC and also prepared "by the Credentialing Committee" for their use in the reappointment of physicians to the medical staff. The affidavit of the senior corporate director of patient relations also states that "risk incident data is also compiled by the MSQOC for the use of both the MSQOC and the Credentialing Committee for the evaluation of physicians." Neither of the affidavits specifically identifies the documents in "Group Exhibit J," which are entitled "Surgeon Case Histories," and the affidavit of the senior corporate director of patient relations does not specify which documents represent the "risk incident data" that is compiled by the MSQOC. Similarly, in its brief on appeal, the defendant refers to "risk incident data" in relation to "Group Exhibit J," but does not specify which documents contain "risk incident data."

¶ 37 As a matter of law, we recognize that section 8-2101 of the Medical Studies Act (735 ILCS 5/8-2101 (West 2012)) applies to information and reports generated by the defendant's credentialing committee in the process of the granting or denying of staff privileges, as this process is a part of the internal quality control of the hospital. See *Stricklin v. Becan*, 293 Ill. App. 3d 886, 889-90 (1997); see also *May v. Wood River Township Hospital*, 257 Ill. App. 3d 969, 976-77 (1994) (J. Welch, dissenting). While the question of whether the act's privilege applies is a question of law that is reviewed *de novo*, the question of whether the specific materials contained in "Group Exhibit J" are part of an internal quality control "is a factual question" on which the defendant bears the burden. See *Webb v. Mount Sinai Hospital & Medical Center of Chicago, Inc.*, 347 Ill. App. 3d 817, 825 (2004) (citing *Berry v. West Suburban Hospital Medical Center*, 338 Ill. App. 3d 49, 53-54 (2003)). In addition, the defendant bears the burden of any failure

18

to make a complete record. *Id.* at 826 (quoting *Grandi v. Shah*, 261 Ill. App. 3d 551, 557 (1994)). The circuit court's factual determination of whether the documents at issue were part of an internal quality control will not be reversed unless it is against the manifest weight of the evidence. *Id.* (quoting *Berry*, 338 Ill. App. 3d at 54). A decision is against the manifest weight of the evidence if an opposite conclusion is clearly apparent or if the trial court's findings appear to be unreasonable, arbitrary, or not based on the evidence. *Id.* (quoting *Freese v. Buoy*, 217 Ill. App. 3d 234, 244 (1991)).

¶ 38   In interpreting section 8-2101 of the Medical Studies Act, the Illinois Supreme Court has held that the purpose of the privilege set forth in that section is to ensure the effectiveness of professional self-evaluation, by members of the medical profession, in the interest of improving quality health care, and is premised on the belief that, absent statutory peer-review privilege, physicians would be reluctant to sit on peer-review committees and engage in frank evaluations of their colleagues. *Richter v. Diamond*, 108 Ill. 2d 265, 269 (1985) (quoting *Jenkins v. Wu*, 102 Ill. 2d 468, 480 (1984)). To that end, information that is generated by a committee of a hospital engaged in any form of internal quality control during the process of peer review is privileged. See *Roach v. Springfield Clinic*, 157 Ill. 2d 29, 40 (1993). However, information that is obtained prior to the initiation of a peer-review process is not transformed into "information of" a peer-review committee merely because the information is reported to that body sometime later. *Id.* at 41. This is because "[i]f the simple act of furnishing a committee with earlier-acquired information were sufficient to cloak that information with the statutory privilege, a hospital could effectively insulate from disclosure virtually all adverse facts

19

known to its medical staff, with the exception of those matters actually contained in a patient's records." *Id.* For this reason, blanket conclusions that information was generated at the request of a reviewing committee are not enough to invoke the protections of the Medical Studies Act. *Cretton v. Protestant Memorial Medical Center, Inc.*, 371 Ill. App. 3d 841, 856-57 (2007).

¶ 39 Applying these principles to the documents contained in "Group Exhibit J," we find that the affidavits that the defendant submitted in support of its claim of privilege do not set forth sufficient facts to mandate a finding that the privilege attaches to these documents. A review of the affidavits does not establish that the information contained within the documents, consisting of a history of the procedures Dr. Dressen performed at the defendant's facilities, would not have been kept in the ordinary course of the defendant's business prior to the credentialing committee and MSQOC commencing a peer-review process. As set forth above, the fact that the information was furnished to these committees in the form of a summary report does not transform the information, which is otherwise discoverable, into privileged information. The documents contain raw data with regard to procedures that Dr. Dressen performed, and contain no data reflecting any physician's evaluation of Dr. Dressen's performance. For these reasons, we find that the defendant failed to meet its burden to prove that the documents contained in "Group Exhibit J" were initiated, created, prepared, or generated by a peer-review committee, rather than in the ordinary course of the defendant's business to later be used by a committee in the peer-review process. See *Chicago Trust Co. v. Cook County Hospital*, 298 Ill. App. 3d 396, 406 (1998). Accordingly, we affirm that part of the circuit court's

20

order that required the defendant to provide "Group Exhibit J" to the plaintiffs. However, we note that MHCPL 669 and 670 contain identifying patient information, and modify the order to require compliance with the provisions of 45 C.F.R. § 164.512(e) (2012).

¶ 40                                    3. The Contempt Order

¶ 41    Having considered all of the issues raised on appeal with regard to the defendant's claims of privilege, the final issue we must address is whether the contempt order should be vacated. Requesting the circuit court to enter a contempt order is a proper procedure to seek immediate appeal of a discovery order. *Green v. Lake Forest Hospital*, 335 Ill. App. 3d 134, 139 (2002). In such situations, where the party sought the order in good faith and was not contemptuous of the circuit court's authority, we may vacate the contempt order even when we find that the circuit court's discovery order was proper. *Webb*, 347 Ill. App. 3d at 828. We find this to be such a case and therefore vacate the circuit court's July 9, 2013, order, which found the defendant to be in contempt of court for failing to produce the contested documents to the plaintiffs and assessed a monetary penalty.

¶ 42                                       CONCLUSION

¶ 43    For the foregoing reasons, we affirm the circuit court's discovery order as embodied in its May 7, 2013, letter to the parties, with the following modifications: (1) references to the Greeley Report and its findings that are contained in the December 1, 2011, application for staff privileges, "Group Exhibit F" at MHCPL 37, 38, and 39, shall be redacted; and (2) any references to identifying patient information, contained within the applications for staff privileges in "Group Exhibit F" and the Surgeon Case Histories

21

contained in "Group Exhibit J," should be produced in compliance with the provisions of 45 C.F.R. § 164.512(e) (2012). In addition, we vacate the July 9, 2013, order that found the defendant to be in contempt and assessed a monetary penalty, and remand this cause for further proceedings.

¶ 44    Affirmed as modified in part and vacated in part; cause remanded.

2014 IL App (5th) 130356

NO. 5-13-0356

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| CAROL KLAINE and KEITH KLAINE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees, | ) | Williamson County. |
| | ) | |
| v. | ) | No. 11-L-163 |
| | ) | |
| SOUTHERN ILLINOIS HOSPITAL SERVICES, | ) | |
| d/b/a St. Joseph Memorial Hospital and Memorial | ) | |
| Hospital of Carbondale, | ) | |
| | ) | |
| Defendant-Appellant | ) | |
| | ) | Honorable |
| (Frederick Dressen and Southern Illinois Medical | ) | Brad K. Bleyer, |
| Services, d/b/a Center for Medical Arts, Defendants). | ) | Judge, presiding. |

---

**Opinion Filed:**     August 6, 2014

---

**Justices:**     Honorable Stephen L. Spomer, J.

Honorable Thomas M. Welch, P.J., and
Honorable Melissa A. Chapman, J.,
Concur

---

**Attorney for Appellants**     Kara L. Jones, John C. Ryan, Feirich/Mager/Green/Ryan, 2001 West Main Street, P.O. Box 1570, Carbondale, IL 62903

---

**Attorney for Appellees**     Thomas Q. Keefe, Jr., Keefe & Keefe, P.C., #6 Executive Woods Court, Belleville, IL 62226

---