# Illinois Official Reports

## Appellate Court

---

**Brown v. Advocate Health & Hospitals Corp.**, 2017 IL App (1st) 161918

---

| | |
|---|---|
| Appellate Court Caption | ANTHONY BROWN, Individually and as Independent Representative of the Estate of Joyce R. Hobson, Deceased, Plaintiff-Appellee, v. ADVOCATE HEALTH AND HOSPITALS CORPORATION, d/b/a Advocate South Suburban Hospital and Advocate Medical Group; OLALEKAN SOWADE, M.D.; ERIK SWENSON, M.D.; JAMES O'DONNELL, M.D.; AGOP TEPELI, M.D.; GUPTA, M.D., S.C.; and SURGICAL SPECIALISTS, S.C., Defendants (Advocate Health and Hospitals Corporation, d/b/a Advocate South Suburban Hospital, Defendant-Appellant). |
| District & No. | First District, Fifth Division<br>Docket No. 1-16-1918 |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | July 28, 2017<br><br>August 28, 2017<br>September 15, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-4430; the Hon. Kathy M. Flanagan, Judge, presiding. |
| Judgment | Discovery order affirmed; contempt order vacated. |
| Counsel on Appeal | Garrett L. Boehm, Jr., and Tammy L. Wade, of Johnson & Bell, Ltd., of Chicago, for appellant. |

Vivian Tarver-Varnado, of AMB Law Group, LLC, of Chicago, for appellee.

| Panel | PRESIDING JUSTICE REYES delivered the judgment of the court, with opinion.<br>Justice Lampkin concurred in the judgment and the opinion.<br>Justice Gordon dissented, with opinion. |
|---|---|

## OPINION

¶ 1    Advocate Health and Hospitals Corporation, d/b/a Advocate South Suburban Hospital (Advocate), a defendant in a medical malpractice action, violated an order of the circuit court of Cook County by refusing to produce certain insurance-related documents for *in camera* inspection. The circuit court held Advocate in "friendly contempt" and imposed a $100 fine, which allowed Advocate to file this interlocutory appeal pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016). As discussed herein, we (i) affirm the judgment of the circuit court directing Advocate to produce certain documents for *in camera* inspection and (ii) vacate the order finding Advocate in contempt and imposing a monetary penalty.

¶ 2                                BACKGROUND

¶ 3    Joyce R. Hobson, after being hospitalized and undergoing multiple medical procedures at Advocate, experienced cardiopulmonary arrest and died on May 23, 2011. Anthony Brown, as the administrator of her estate, filed a medical malpractice action against Advocate and other defendants in 2013.

¶ 4    The plaintiff issued discovery requests seeking copies of Advocate's insurance policies. Advocate responded that there is no policy to produce because it is a self-insured entity. Pursuant to multiple court orders, Advocate was directed to produce its insurance policies. The circuit court also entered a protective order, which provided that any insurance documents produced by Advocate would remain strictly confidential and solely be used for purposes of this litigation.

¶ 5    The plaintiff filed a motion to compel, seeking compliance with the previous court orders and for sanctions pursuant to Illinois Supreme Court Rule 219 (eff. July 1, 2002). According to the plaintiff, Advocate had produced a "few pages of a document that was 99% blank."[1] In a court order entered on June 7, 2016, Advocate was directed "to tender its full trust agreement related to the substance of the [motion to compel] and an unredacted copy of the endorsement previously tendered for *in camera* inspection on or before June 14, 2016."

¶ 6    During a hearing on June 14, 2016, Advocate represented that it had previously disclosed $12.5 million in coverage for the plaintiff's claim pursuant to a self-insured retention and trust. Advocate continued to refuse to produce the trust agreement or related documents and asked to

---

[1]Because the document was the subject of the protective order, the plaintiff did not append it to its motion to compel.

be held in "friendly contempt." At the conclusion of the hearing, the circuit court directed the following statements to Advocate's counsel:

> "[J]ust so I can have it clear, you now are stating in open court that you are asking me to enter a friendly contempt citation against [Advocate] for purposes of appealing my order requiring [Advocate] to produce to me, for *in camera* inspection, a copy of the self-insured trust agreement plus any endorsements showing who is covered, under what circumstances people are covered, if employees are covered, all the normal and customary issues that are governed by insurance documents and/or policies and/or indemnity agreements."

Advocate's counsel answered affirmatively. In a written order entered on June 14, 2016, the circuit court held Advocate in friendly contempt for failing to comply with the June 7, 2016, order for the reasons stated on the record and imposed a $100 fine. Advocate filed this timely appeal pursuant to Rule 304(b)(5). Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016).

¶ 7                                                    ANALYSIS

¶ 8        Advocate advances three primary contentions on appeal. It initially argues that "[i]nsurance documents are not discoverable in a tort action not involving insurance coverage because the insurance documents lack relevance to the claims advanced." Advocate next contends that its trust agreement is a confidential financial document rather than an insurance document and thus the circuit court abused its discretion in ordering its production. Finally, Advocate argues that the contempt order should be vacated because its actions were not contemptuous of the circuit court's authority. We address each argument below.

¶ 9        A discovery order issued by the circuit court is generally not appealable because it is not a final order. *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001); *Adler v. Greenfield*, 2013 IL App (1st) 121066, ¶ 39. It is well settled, however, that the correctness of a discovery order may be tested through contempt proceedings. *Adler*, 2013 IL App (1st) 121066, ¶ 39; *Payne v. Hall*, 2013 IL App (1st) 113519, ¶ 10. Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016) provides that an "order finding a person or entity in contempt of court which imposes a monetary or other penalty" is appealable without the special finding required for appeals under Rule 304(a). In the instant case, the circuit court fined Advocate $100 for contempt to facilitate an appeal pursuant to Rule 304(b)(5).

¶ 10       The standard of review for a contempt order is abuse of discretion. *Payne*, 2013 IL App (1st) 113519, ¶ 10; *Illinois Emcasco Insurance Co. v. Nationwide Mutual Insurance Co.*, 393 Ill. App. 3d 782, 785 (2009). A circuit court abuses its discretion when its ruling is arbitrary, unreasonable, fanciful, or where no reasonable person would take the view adopted by the circuit court. *Payne*, 2013 IL App (1st) 113519, ¶ 10.

¶ 11       Because Advocate is appealing a finding of contempt based on its noncompliance with a discovery order, we must necessarily review the propriety of the discovery order. See *Norskog*, 197 Ill. 2d at 69*; Klaine v. Southern Illinois Hospital Services*, 2014 IL App (5th) 130356, ¶ 9; *Illinois Emcasco Insurance*, 393 Ill. App. 3d at 785. Discovery rulings generally are reviewed for an abuse of discretion. *Klaine*, 2014 IL App (5th) 130356, ¶ 10; *Adler*, 2013 IL App (1st) 121066, ¶ 40. Although the applicability of a privilege is reviewed *de novo* (*Klaine*, 2014 IL App (5th) 130356, ¶ 10), Advocate has expressly represented that its objection to production is based on relevance, not on confidentiality or privilege grounds.

¶ 12    Illinois Supreme Court Rule 201 (eff. May 29, 2014) "defines the scope of discovery in civil cases and has been interpreted to allow discovery of all information that would be admissible at trial as well as information which is reasonably likely to lead to admissible evidence." *Klaine*, 2014 IL App (5th) 130356, ¶ 14. Rule 201(b)(1) provides, in part, that a party generally "may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action." Ill. S. Ct. R. 201(b)(1) (eff. May 29, 2014). Rule 401 of the Illinois Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). Pursuant to Rule 402 of the Illinois Rules of Evidence, all relevant evidence generally is admissible, and evidence that is not relevant is not admissible. Ill. R. Evid. 402 (eff. Jan. 1, 2011).

¶ 13    Advocate argues that the content of the requested insurance documents lacks relevance to the tort claims advanced by the plaintiff and thus the discovery orders compelling their production should be vacated. As discussed herein, however, we view the issue of *discoverability* as distinct from *admissibility* in the context of this case.

¶ 14    Citing *Seldin v. Babendir*, 325 Ill. App. 3d 1058 (2001), and *Imparato v. Rooney*, 95 Ill. App. 3d 11 (1981), Advocate contends that "[e]vidence that a party is insured is generally inadmissible at trial." *Seldin* and *Imparato* addressed the propriety of questioning prospective jurors regarding their interest in or connections to the insurance industry during *voir dire* in a personal injury action. *Seldin*, 325 Ill. App. 3d at 1064; *Imparato*, 95 Ill. App. 3d at 15. The courts in both cases noted that evidence *informing a jury* that a defendant is insured against liability is generally inadmissible. *Seldin*, 325 Ill. App. 3d at 1064; *Imparato*, 95 Ill. App. 3d at 17. Unlike in *Seldin* or *Imparato*, however, the instant case involves the discoverability of documents, not their ultimate admissibility at trial. See, *e.g.*, *Crnkovich v. Almeida*, 261 Ill. App. 3d 997, 999 (1994) (noting that "the concept of relevance is broader for discovery purposes than for purposes of the admission of evidence at trial, since it includes not only what is admissible at trial, but also that which leads to what is admissible"); *Maxwell v. Hobart Corp.*, 216 Ill. App. 3d 108, 110-11 (1991) (stating that "[p]retrial discovery presupposes a range of relevance and materiality much broader than that of admissibility of evidence at trial").

¶ 15    The Illinois Supreme Court in *People ex rel. Terry v. Fisher*, 12 Ill. 2d 231 (1957), recognized an exception to the relevancy requirement of Rule 201, *i.e.*, "that information that may be discovered prior to trial be admissible in evidence or lead to admissible evidence." *Manns v. Briell*, 349 Ill. App. 3d 358, 365 (2004) (discussing *Fisher*). In *Fisher*, the defendant in a personal injury action arising out of an automobile accident challenged circuit court orders compelling him to answer interrogatories regarding the existence and amount of his liability insurance. *Fisher*, 12 Ill. 2d at 231-32. The Illinois Supreme Court rejected "those cases limiting pretrial discovery to matters admissible in evidence" but noted that it did "not imply that answers to interrogatories can be brought to the attention of the jury." *Id.* at 237.

¶ 16    In upholding the discovery orders, the *Fisher* court noted that, under certain Illinois statutes, "liability insurance is not merely a private matter for the sole knowledge of the carrier and the insured, but is also for the benefit of persons injured by the negligent operation of insured's motor vehicle." *Id.* at 238. Our supreme court further stated:

"Unlike other assets, a liability insurance policy exists for the single purpose of satisfying the liability that it covers. It has no other function and no other value. Litigation is a practical business. The litigant sues to recover money and is not interested in a paper judgment that cannot be collected. The presence or absence of liability insurance is frequently the controlling factor in determining the manner in which a case is prepared for trial." *Id.*

The *Fisher* court noted that a plaintiff ordinarily "has many sources of inquiry by means of which he can appraise the likelihood that the judgment he seeks will be enforceable." *Id.* at 238-39. An insurance company, however, "is responsible only within the limits of the policy it has issued," and thus a plaintiff's knowledge of the identity or financial status of the insurance company "does not help him." *Id.* at 239.

¶ 17    Advocate essentially argues for a narrow interpretation of *Fisher*, limiting its applicability to discovery disputes involving interrogatories and not document production requests. Neither *Fisher* nor any other decision cited by Advocate, however, expressly provides that insurance documents cannot or should not be produced during discovery in a tort action such as the instant case. We further note that certain Illinois decisions in other contexts suggest that production of an insurance policy may be proper. See, *e.g.*, *Monier v. Chamberlain*, 35 Ill. 2d 351 (1966) (noting that the insurance policy was produced in accordance with a production order; addressing whether related documents were discoverable); *Curtis v. Birch*, 114 Ill. App. 3d 127, 130 (1983) (stating that the plaintiffs should have provided copies of the insurance policy on which they based their claim "and, given the liberal discovery rules in this State (87 Ill. 2d R. 214), there is no excuse for plaintiffs' failure to have done so"); *Schultz v. Continental Casualty Co.*, 79 Ill. App. 3d 1035, 1039 (1979) (reversing trial court orders denying the production of the complete insurance policy).

¶ 18    Advocate also cites Illinois Supreme Court Rule 213 (eff. Jan. 1, 2007), addressing written interrogatories to parties, and Illinois Supreme Court Rule 214 (eff. July 1, 2014), addressing requests for the production of documents. Advocate observes that the standard form interrogatories for medical malpractice actions against hospitals—promulgated pursuant to Rule 213(j) —permit plaintiffs to obtain information regarding insurance. Advocate posits that "[i]f defendants were expected to produce insurance policy documents to plaintiffs, that expectation would be reflected in Rule 214." Rule 214, however, has no corollary to Rule 213(j), *i.e.*, Rule 214 does not provide for *any* standard forms of requests for the production of documents. Ill. S. Ct. R. 214 (eff. July 1, 2014).

¶ 19    Advocate notes that the Illinois Supreme Court has neither incorporated nor endorsed Rule 26(a)(1)(A)(iv) of the Federal Rules of Civil Procedure, which requires a party's production of insurance agreements even prior to any discovery requests. Fed. R. Civ. P. 26(a)(1)(A)(iv). While Advocate suggests that the fact the Illinois Supreme Court has *not* adopted a federal rule is significant, it fails to provide any support for this proposition. Although we are not bound by the Federal Rules of Civil Procedure (*e.g.*, *Bianchi v. Savino Del Bene International Freight Forwarders, Inc.*, 329 Ill. App. 3d 908, 928 (2002)), we further recognize the advisory committee notes regarding Rule 26 characterize insurance documents as part of the "*basic information* that is needed in most cases to prepare for trial or make an informed decision about settlement." (Emphasis added.) Fed. R. Civ. P. 26 (Notes of Advisory Committee—1993 Amendment).

¶ 20    The *Fisher* court's observation that "[l]itigation is a practical business" (*Fisher*, 12 Ill. 2d at 238) is arguably more compelling in the instant case, given the amorphous nature of Advocate's self-insured status. As noted in *Fellhauer v. Alhorn*, 361 Ill. App. 3d 792, 796 (2005), the term "self-insurance" has no precise legal meaning. "The concept has led courts and legislatures to struggle with questions of how to treat parties acting as their own insurer and, in particular, whether self-insurers should be considered the equivalent of an insurer." *Id.* In a recent decision, this court defined "insurance" as generally referring to "a policy issued by an authorized and licensed insurance company whose primary business is to assume certain risks of loss of its insureds, in exchange for the payment of a 'premium.' " *Philadelphia Indemnity Insurance Co. v. Pace Suburban Bus Service*, 2016 IL App (1st) 151659, ¶ 32. Self-insurance, by contrast, was defined as "the retention of the risk of loss by the one upon whom it is directly imposed by law or contract." (Internal quotation marks omitted.) *Id.* While the dissent suggests that Advocate negotiated its self-insured trust with an insurance company, such proposition is not definitively demonstrated by the record.

¶ 21    Other than the $12.5 million amount, Advocate has provided little to no information regarding the scope or nature of the self-insured trust and related documents. Even if it is not a standard insurance policy *per se*, Advocate's self-insured trust presumably exists—at least indirectly—for the ultimate benefit of parties such as the plaintiff, like the liability policy at issue in *Fisher*. Furthermore, as the plaintiff observes, a review of the self-insurance documents may lead to admissible evidence regarding certain substantive issues in this case, *e.g.*, whether an agency relationship existed between certain defendants.

¶ 22    In sum, we reject Advocate's contention that we "need not reach the question of *in camera* review because [the plaintiff's] document request seeking irrelevant insurance policies was improper in the first instance according to *Fisher*." Advocate has not cited any case, statute, or rule that plainly exempts it from production of its insurance-related documents.

¶ 23    Turning to the issue of *in camera* review, we recognize that a trial court may supervise all or any part of the discovery process. Ill. S. Ct. R. 201(c)(2) (eff. May 29, 2014). "This power includes the authority to review discovery materials *in camera* to determine any possible relevance." *Youle v. Ryan*, 349 Ill. App. 3d 377, 381 (2004). The circuit court's comments during the June 14, 2016, hearing indicate that its order entered on June 7, 2016—providing for *in camera* review—superseded the prior orders that directed Advocate to produce the documents to the plaintiff. Although Advocate's notice of appeal references prior orders, the issue we consider herein is whether the circuit court erred in ordering an *in camera* inspection.

¶ 24    Circuit courts are afforded wide latitude in their rulings on discovery matters. *Payne*, 2013 IL App (1st) 113519, ¶ 13. Based on our review of the record, the circuit court did not abuse its discretion in ordering an *in camera* inspection of Advocate's insurance-related documents. Absent such a firsthand review, the circuit court would have no means to assess the discoverability of the challenged materials.

¶ 25    Citing *Manns*, 349 Ill. App. 3d 358, Advocate also contends that its trust agreement is a confidential financial document rather than an insurance document and thus the circuit court erred in ordering its production. As noted above, contrary to Advocate's assertions, the circuit court's June 2016 orders solely contemplated an *in camera* review, not production of the disputed materials to the plaintiff. In any event, Advocate's reliance on *Manns* is misplaced.

¶ 26    The plaintiff in *Manns* filed a negligence action, alleging personal injuries arising out of an automobile accident. *Id.* at 359. During pretrial discovery, the plaintiff sought documents and

information pertaining to the defendant's personal financial affairs. *Id.* The defendant refused to answer, contending that the requested materials were irrelevant to any issue in the lawsuit and were not subject to discovery until a judgment was entered against him exceeding the limits of his liability insurance policy. *Id.* In reversing the trial court's finding of contempt, the appellate court noted that "[t]here are important differences between a liability insurance policy and a defendant's personal financial assets that do not justify extending the holding in *Fisher* to pretrial discovery of a defendant's financial affairs." *Id.* at 364. The *Manns* appellate court noted that certain rights are created by liability insurance policies, which inure to the benefit of injured parties. *Id.* at 365. Conversely, a plaintiff only has rights regarding a defendant's financial assets after a judgment is entered. *Id.*

¶ 27 As an initial matter, we presume that an entity's self-insured trust agreement would be more akin to an insurance document than the types of confidential financial documents at issue in *Manns*. The fact that Advocate appears to have disclosed the existence of the $12.5 million in self-insurance in response to the plaintiff's interrogatories regarding insurance belies its efforts to distinguish its trust document from a traditional liability policy. More significantly, we fail to understand how the circuit court (or this court) could simply accept Advocate's representation that the trust document is "nothing more than one of Advocate's financial documents," which it utilizes "to set forth its proprietary self-insured business structure." The dissent contends that the self-insured trust is a confidential document containing trade secrets; however, the circuit court could not be expected to assess the potential applicability of *Manns* absent an *in camera* inspection of the disputed documents. The dissent also posits that Advocate would not want its employees, physicians, or other medical personnel to know the intricate matters contained in the trust. Although our decision herein is limited to the propriety of *in camera* review, we note that a protective order entered by the circuit court strictly limits the use or dissemination of any produced insurance documents. We thus conclude that the circuit court did not abuse its discretion. See, *e.g.*, *Anderson v. St. Mary's Hospital*, 101 Ill. App. 3d 596, 600 (1981) (noting that "where there is a genuine dispute as to the nature or content of the document sought to be discovered, an attorney must ordinarily comply with the trial court's order for an *in camera* inspection of the document or be subject to sanctions for contempt").

¶ 28 As a final matter, Advocate asks that we vacate the contempt order, and the plaintiff does not object. "Requesting the circuit court to enter a contempt order is a proper procedure to seek immediate appeal of a discovery order." *Klaine*, 2014 IL App (5th) 130356, ¶ 41; accord *Adler*, 2013 IL App (1st) 121066, ¶ 71. "If we find that the discovery order should be upheld, we may nevertheless vacate the finding of contempt and assessment of a monetary penalty if we find that the defendant's refusal to produce the documents at issue was not contemptuous of the circuit court's authority but rather was made in good faith based on sound legal arguments for purposes of effectuating an interlocutory appeal." *Klaine*, 2014 IL App (5th) 130356, ¶ 9. We find this to be such a case and thus vacate the circuit court's June 14, 2016, order, which found Advocate to be in contempt of court for failing to produce the contested documents for *in camera* inspection and assessed a monetary penalty. See *Chicago Trust Co. v. Cook County Hospital*, 298 Ill. App. 3d 396, 410 (1998) (vacating a contempt order where the hospital-defendant's refusal to produce documents was "not contemptuous of the court's authority").

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's order of June 7, 2016, directing the production of certain documents for *in camera* inspection. We vacate the circuit court's order of June 14, 2016, which found Advocate in contempt and assessed a monetary penalty.

Discovery order affirmed; contempt order vacated.

JUSTICE GORDON, dissenting.

I must respectfully dissent. Advocate represented that it had $12.5 million in coverage for plaintiff's claim pursuant to a self-insured retention and trust agreement. There are obvious reasons why a hospital that negotiates a self-insured trust with an insurance company does not want anyone to know the financial formulas that are contained in their self-insured trust. These documents contain confidential financial information regarding the triggering of payments by the insurance company or companies that are providing the excess coverage contained in the trust. Advocate's self-insured trust does not exist for the benefit of injured parties such as the plaintiff in this case, like the liability policy at issue in *Fisher*. I doubt whether Advocate would want its employees, physicians, or other medical personnel to know the intricate matters contained in this trust. This is basically a confidential document with trade secrets that is not relevant in any malpractice case before the entry of a judgment and may not even be relevant after judgment if Advocate has the funds to pay to satisfy any judgment entered against it. I also do not agree with the majority that it could lead to admissible evidence as to whether an agency relationship existed between certain defendants, and there is nothing in the record of this case that would indicate that was an issue. I know of no court that has allowed the production of a self-insured trust by a hospital, municipality, or large corporation before judgment, nor do I find any relevancy in ordering its production. A self-insured trust is not an insurance policy and should not be treated as one. I would reverse the circuit court of Cook County and vacate the contempt finding and fine.